* Note from the reporter of decisions: This opinion was released by the Supreme Court under the date January 28, 2000. The case was actually released to the public on January 27, 2000.
Jerry James and his brother Thomas were business partners. Jerry sued Thomas, alleging, individually, claims of "oppression/squeeze out" and "suppression," and alleging, on behalf of Indies House, Inc., of which he was a minority shareholder, breach of fiduciary duty. Thomas counterclaimed derivatively on behalf of Franklin Homes, Inc., of which he was a minority shareholder, claiming breach of fiduciary duty, oppression, and suppression. After a trial, the jury returned the following verdict: "[We], the jury, find for the plaintiff and against the defendant and assess the plaintiff's damages at compensatory $4,213,283.10." (Punitive -0-; Total $4,213,283.10.) "[We] further find in favor of the plaintiff against *Page 358 
the defendant on the counterclaim." That amount included 10% as either prejudgment interest or lost profits. The court entered a judgment on that verdict. The trial court later awarded Jerry an attorney fee of $445,000. Thomas appealed. We affirm in part, reverse in part, and remand.
Jerry is the majority shareholder in Franklin Homes, Inc., owning 57% of the stock; Thomas is one of three minority shareholders and owns 31.11% of the stock. Thomas was the majority shareholder of Indies House, Inc., owning 56% of the stock, while Jerry was one of two minority shareholders and held 41.5% of the stock. The stock in both corporations had been held by the James family since their incorporation, and Jerry and Thomas were involved in each of the corporate businesses. The record shows that the Indies House corporation was having financial troubles and that it was sold during the trial.
At trial, Jerry introduced evidence indicating that Thomas had paid himself excessive salaries, had paid members of his family excessive salaries, had bought automobiles for his children with corporate funds, and had used excess corporate cash to finance loans and had personally retained the interest paid on those loans. Jerry argued that the amount that he received from the liquidation (sale) of Indies House was less than it should have been, because of Thomas's mismanagement and theft. Jerry's expert suggested an amount of damages by taking the total amount Thomas claimed to have lost by each act of wrongdoing and multiplying it by .415 — Jerry's interest in Indies House being 41.5%. He then totaled these amounts, for the sum of approximately $5,000,000; the jury awarded $4,213,283.10.
Thomas raises a number of issues. They can be combined into four: (1) Were all of the claims that Jerry makes actually derivative claims, and can Jerry individually collect on derivative claims? (2) Did Jerry make an adequate presuit demand to Indies House? (3) Was the award of an attorney fee proper? (4) Did the trial court err in allowing the jury to consider a 10% addition to Jerry's compensatory damages as either prejudgment interest or lost profits?
First, we deal with the issue whether all of Jerry's claims were derivative claims, or whether some can be considered individual claims. Jerry made certain derivative claims: that Thomas (1) had wasted corporate assets; (2) had paid excessive compensation to himself and his family; (3) had illegally usurped corporate opportunities; and (4) had unjustly enriched himself at the expense of Indies House. He also made individual claims of "oppression/squeeze out" and fraudulent suppression, based on Thomas's alleged misconduct and breach of a fiduciary duty to Jerry. Thomas contends that all of these claims are really derivative claims and, therefore, that if any damages are awarded for them, then Indies House, not Jerry, is entitled to them.
This Court has held that majority shareholders in a close corporation owe a duty to act fairly toward minority shareholders.Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458, 467 (Ala. 1997); Burt v. Burt Boiler Works, 360 So.2d 327, 331 (Ala. 1978). However, it has also held that when a plaintiff's status as a shareholder is essential to his claims for damages, including damages based on claims of suppression and oppression, the claims are derivative claims and must be brought on behalf of the corporation. Pegram v. Hebding, 667 So.2d 696, 702 (Ala. 1995);McLaughlin v. Pannell Kerr Forster, 589 So.2d 143 (Ala. 1991). Therefore, "a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also `unfair' to him as well." Stallworth, 709 So.2d at 467. *Page 359 
Jerry made claims for individual damages based on the harm he says was done to Indies House. The cause of this harm was Thomas's alleged mismanagement of Indies House. Therefore, any claims made by Jerry should have been derivative claims. The trial court gave the jury instructions indicating that the plaintiff was claiming both individually and on behalf of Indies House. The verdict awarding Jerry over $4,000,000 was a general verdict simply "for the plaintiff and against the defendant." Because all of the claims were in fact derivative claims, all of the damages ordinarily would have been awarded to Indies House. However, the trial court recognized in its order of September 4, 1998, that Indies House was to be liquidated; the 41.5% share of the corporation that Jerry owned was placed in trust.
Apparently, this liquidation was followed by some kind of merger with, or buy out by, IH Corporation. An action containing a party involved in a merger or share exchange may continue with that party, or the surviving party may be substituted for that party. Ala. Code 1975, § 10-2B-11.06. Here, the action continued on behalf of Indies House. However, the liquidation leaves the question who should receive the damages awarded. Because Jerry had no valid individual claims, all of the damages should normally be awarded to Indies House, but by the time the court entered its judgment Indies House had already been liquidated and Jerry had already received value for his 41.5% interest. Would it then be equitable to give the damages to an already liquidated corporate entity or to give those damages directly to the shareholders? In order to fashion an equitable remedy, the damages would need to be passed through Indies House directly to the shareholder, Jerry James. In an equity proceeding, such as the present one, the judgment can be molded "so as to adjust the equities of all parties and to meet the obvious necessities of each situation."Coupounas v. Morad, 380 So.2d 800, 803 (Ala. 1980); BBCInvestment Co. v. Ginsburg, 280 Ala. 148, 190 So.2d 702 (1966);Bouldin v. City of Homewood, 277 Ala. 665, 174 So.2d 306 (1965) (on rehearing). See also Fulton v. Callahan, 621 So.2d 1235
(Ala. 1993).
Although this specific situation has not been addressed by this Court or by any Alabama appellate court, the Wisconsin Court of Appeals has dealt with this issue and has affirmed equitable remedies created by the trial court. Mulder v. Mittelstadt,120 Wis.2d 103, 115, 352 N.W.2d 223, 228-29 (Wis.App. 1984). Furthermore, the Wisconsin Court of Appeals has held, in a situation similar to that presented by this case, that the damages could pass through the corporation being liquidated, directly to the shareholders. Strassman v. Gehling, 192 Wis.2d 762,532 N.W.2d 468 (Wis.App. 1995) (table) (unpublished opinion).[1] In order to create a remedy that was most equitable to all of the parties, the court awarded Jerry damages for his portion of the total loss that the corporation suffered as a result of Thomas's mismanagement. Rather than award money damages to a corporation that was being liquidated, it was more equitable to award Jerry the portion of the money damages that he would have rightly received had the money been in the treasury of Indies House at the time it was liquidated. Therefore, Jerry could collect on these derivative claims, and the jury could determine the amount of damages by multiplying the total amount of loss caused by Thomas by each act of wrongdoing against Indies House, by Jerry's percentage of ownership (41.5%), and then adding these amounts *Page 360 
together to reach the total amount of damages.
Before a shareholder can be awarded damages on a derivative claim, the shareholder must make a presuit demand on the board of directors of the corporation to correct the wrongs alleged, so that the corporation can deal with the problems internally if possible. Stallworth, 709 So.2d at 463; Shelton v. Thompson,544 So.2d 845, 850 (Ala. 1989); Kaufman v. Kansas Gas Elec. Co.,634 F. Supp. 1573, 1577 (D.Kan. 1986); Lewis v. Graves,701 F.2d 245, 247 (2d Cir. 1983). However, if the demand on the directors would be futile, then the demand requirement is excused. Elgin v.Alfa Corp., 598 So.2d 807 (Ala. 1992); American Life Ins. Co. v.Powell, 262 Ala. 560, 564, 80 So.2d 487, 490 (1954). In order to show futility, "the shareholder . . . must demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty."Elgin, 598 So.2d at 815.
We must determine whether a demand on the board of directors of Indies House would have been so futile as to eliminate the requirement. Thomas raised this question by a directed-verdict motion, which the trial court denied. The standard of review on decisions involving a question of futility of demand is the abuse-of-discretion standard. Shelton, 544 So.2d at 850;Lewis v. Graves, 701 F.2d at 248; Newton v. Hornblower,224 Kan. 506, 511, 582 P.2d 1136 (1978); de Haas v. Empire Petroleum Co.,435 F.2d 1223 (10th Cir. 1970); see also Bass v. First Alabama Bancshares,544 So.2d 858, 863 (Ala. 1989).[2] Jerry wrote a letter to Thomas explaining his demands for the corporation. His attorney sent one as well, threatening this lawsuit. Even if these demands were not sufficient, the trial court correctly determined that any further demand would be futile. Testimony both in depositions and at trial indicated that Thomas ran Indies House the way he wanted to and that he made all the decisions. The record indicates that a great deal of animosity between Jerry and Thomas had built up over the years because of the different styles they had in running the two companies. Jerry placed these facts before the trial court to show that any further demand made on Thomas would have been futile. The trial court did not abuse its discretion in finding that a request would have been futile; it had sufficient evidence before it to make that determination. Thus, the plaintiff was relieved of the demand requirement. We affirm that portion of the trial court's judgment awarding Jerry damages for the harm caused to Indies House.
Did the trial court properly award the attorney fee? The "American Rule" of awarding attorney fees has been that a party must pay his own attorney's fee, and in the vast majority of situations this is the proper rule. Reynolds v. First AlabamaBank of Montgomery, 471 So.2d 1238, 1240 (Ala. 1985). However, Alabama law has made exceptions to the American Rule:
 "In Alabama, attorneys' fees are recoverable only where authorized by statute, when provided [for] in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be made. Shelby County Commission v. *Page 361 Smith, 372 So.2d 1092 (Ala. 1979); State ex rel. Payne v. Empire Life Ins. Co., 351 So.2d 538
(Ala. 1977)."
Eagerton v. Williams, 433 So.2d 436, 450 (Ala. 1983), quoted inReynolds, 471 So.2d at 1241. The "special-equity" exception, often called the "common-fund" or "common-benefit" exception, was originally established to permit an award of fees in a case in which one of the parties had acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Id. at 1242, citing 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972). This exception allows the court to award an attorney fee in a situation "where the plaintiff's efforts are successful in creating a fund out of which the [fee] may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff." Ex parte Horn, 718 So.2d 694, 702 (Ala. 1998); City of Ozark v. Trawick, 604 So.2d 360 (Ala. 1992); Brownv. State, 565 So.2d 585 (Ala. 1990); Bell v. Birmingham News Co.,576 So.2d 669 (Ala.Civ.App. 1991). Whether to award an attorney fee in such a case is within the sound discretion of the trial court.
The trial court explained its award of an attorney fee by saying that "where the jury has found a fiduciary engaged in fraud or breach of fiduciary duty in connection with the management of a corporation, fraud and gross mismanagement, the Court has discretion to award attorney's fees against that fiduciary." It appears that the trial court used the special-equity exception to support its award of the attorney fee; however, the record contains no evidence indicating that anyone but Jerry received a benefit from this action. All of the damages were awarded to Jerry personally. Therefore, the trial court could not properly have based the attorney-fee award on any evidence of a common benefit or fund. Thus, we conclude that the court abused its discretion in awarding the attorney fee. We reverse that portion of the trial court's judgment awarding the attorney fee.
Did the trial court err in allowing a 10% addition to Jerry's compensatory damages as either prejudgment interest or lost profits? Jerry offered expert testimony to support this 10% addition. However, Thomas made no specific objection to the addition of the 10%. Although Thomas had a continuing objection to the testimony of Jerry's expert, Wray Pierce, this objection was related to Pierce's testimony concerning the question whether Thomas had breached his fiduciary duty to Jerry. Thomas did raise the issue of the 10% addition in an oral Rule 50(a), Ala.R.Civ.P., motion at the close of all the evidence, and in a written Rule 50(b) motion, but the law requires that an objection be made when the evidence is offered. See Macon County Comm'n v. Sanders,555 So.2d 1054 (Ala. 1990); Charles W. Gamble, McElroy's AlabamaEvidence § 426.01(3) at 1720-22 (5th ed. 1996); Davis v.Southerland Corp., 465 So.2d 397 (Ala. 1985). Because Thomas did not timely object at trial to the offered evidence regarding a 10% addition to Jerry's compensatory damages, the question whether that addition was proper is not properly before us.
Conclusion
That portion of the judgment awarding the compensatory damages to Jerry individually is affirmed; the award of the additional 10% is affirmed; but the award of attorney fee is reversed; and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C. J., and SEE, BROWN, and ENGLAND, JJ., concur.
LYONS, J., concurs in the result only as to reversal of award of attorney fees and concurs in all other aspects.
MADDOX, J., concurs in the result. *Page 362 
JOHNSTONE, J., concurs in part and dissents in part.
[1] We recognize that this is an unpublished opinion of the Wisconsin Court of Appeals, and that Wisconsin law provides that such an opinion has no precedential value and may be cited only in limited instances. Wis. Stat. Ann. § 809.23(3) (West 1996). Obviously we do not cite this case as binding precedent, but only to support our conclusion that the trial court correctly fashioned an equitable remedy, by showing that other courts have held similarly.
[2] While it is true that Elgin applies a de novo standard of review, the discussion in that case is applying the de novo standard to the summary judgment. It does not specifically discuss the relevant standard for reviewing the trial court's decision that the director's demand would be futile. Furthermore, note 2 of that case recognizes an exception to the de novo review for a decision by a trial court based on oral testimony. 598 So.2d at 811. Shelton and Bass both specifically state that the ruling on the futility question is in the sound discretion of the trial court. Therefore, it appears that the abuse-of-discretion standard set out in Shelton and Bass would fit within the exception laid out in note 2 of Elgin.