591 S.E.2d 577 (2004)
James H. SLAUGHTER, Trustee of the Freeman C. Slaughter and Genevieve P. Slaughter Charitable Remainder Trust, Freeman C. Slaughter, and Genevieve P. Slaughter, Plaintiffs,
v.
J. Todd SWICEGOOD, Raymond James & Associates, Inc., Raymond James Financial Services, Inc., the Estate of Robert Lee Saunders, Samuel T. Goforth, and Saunders & Goforth, Attorneys at Law, P.A., Defendants.
No. COA03-171.
Court of Appeals of North Carolina.
February 3, 2004.
*579 Forman, Rossabi, Black, P.A., by Amiel J. Rossabi, Greensboro, for plaintiff-appellees.
Hunton & Williams, by Scott M. Ratchick and Amy K. Alcoke, pro hac vice, Atlanta, GA, for defendant-appellants.
LEVINSON, Judge.
J. Todd Swicegood, Raymond James & Associates, Inc. (RJA), and Raymond James Financial Services, Inc. (RJFS) appeal from the trial court's 31 October 2002 order (1) denying their motion to compel arbitration, and (2) refusing to dismiss plaintiffs Freeman and Genevieve Slaughters' individual claims. Defendants Swicegood, RJA, and RJFS (collectively defendants) also appeal from the trial court's 3 January 2003 order denying their motion to reconsider the 31 October 2002 order. The remaining defendants named in the complaint (the Estate of Robert Lee Saunders, Samuel T. Goforth and Saunders and Goforth, P.A.) are not parties to this appeal. We affirm in part, reverse in part and dismiss in part.
In 1989, plaintiffs Freeman and Genevieve Slaughter (the Slaughters) consulted with attorney Robert Saunders for retirement and estate planning. Defendant Saunders advised the Slaughters to create a charitable remainder unitrust to provide maximum financial benefit to their estate. On 7 October 1989 the Slaughters established the Freeman C. Slaughter and Genevieve P. Slaughter Charitable Remainder Trust (the Trust). Defendant Saunders was appointed as trustee. The Slaughters transferred title to approximately 155 acres of real property to the Trust. The Trust sold the real property in December 1989 and collected the proceeds of the sale in installment payments over several years. The Trust agreement required that the Slaughters be paid a sum equal to fourteen percent of the Trust's value each year. Upon the death of both Freeman and Genevieve Slaughter, the Trust's remainder would be distributed to Duke University Medical Center.
Defendant Saunders initially invested the Trust assets with Interstate Johnson Lane, Co. Saunders placed the Trust funds in an account with defendant RJA on 7 December 1990. Defendant J. Todd Swicegood served as an investment advisor and managed the Trust account with RJA. Swicegood is an employee of defendant RJA, which is a subsidiary of defendant RJFS. When establishing the Trust's RJA account, defendant Saunders, as trustee, allegedly signed a Raymond James Customer Agreement (Customer Agreement) that contained the following clause:
The undersigned client agrees, and by carrying an account for the undersigned client you agree, that all controversies [that] may arise between us concerning any transaction or the construction, performance of breach of this or any other agreement between us pertaining to securities or other property, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules, then applying, of either the National Association of Securities Dealers, Inc., New York Stock Exchange, Inc., American Stock Exchange, Inc., or where appropriate, the Chicago Board Options Exchange, Inc., as I elect.
Defendant Swicegood discouraged the Slaughters from being involved personally in the management of the trust assets. He assured the Slaughters on several occasions that the trust investments were doing well.
The Slaughters were informed in early November 1999 that defendant Saunders was critically ill. Saunders died on 8 November 1999. Before his death, Saunders resigned as trustee of the Trust and appointed defendant Swicegood as a successor trustee on 27 October 1999.
The Slaughters were notified in early 2001 that defendant Swicegood had transferred the Trust funds to an annuity account. Swicegood explained that the transfer would protect the Trust's assets from the falling prices of the stock market. Freeman and Genevieve Slaughter became concerned about defendant Swicegood's management of the Trust account and attended several meetings with him.
*580 On 9 July 2001, defendant Swicegood, at the Slaughters' request, resigned as trustee and appointed James H. Slaughter as trustee. The files relating to management of the trust were presented to Trustee Slaughter in disarray, including unopened correspondence and overdue bills from the Internal Revenue Service. Trustee Slaughter contacted defendant Swicegood on 29 August 2001 by certified mail to request that the Trust account be closed.
Trustee Slaughter, on behalf of the Trust, sued all defendants on theories of fraud, negligent misrepresentation, breach of fiduciary duty, negligence, breach of contract, unfair and deceptive trade practices, securities violations, civil conspiracy and demanded an accounting of trust funds. Freeman and Genevieve Slaughter joined the lawsuit in their individual capacities. Defendants Swicegood, RJA and RJFS moved to dismiss the Slaughters' individual claims for lack of standing. Additionally, defendants moved to compel arbitration of plaintiffs' claims. The trial court denied both motions in an order filed 31 October 2002. Defendants' motion for reconsideration was denied by the trial court in an order filed 3 January 2003. Defendants appeal.
Defendants first argue that the trial court erred in finding that no arbitration agreement existed. Defendants contend that the Customer Agreement, signed by defendants Swicegood and Saunders, contained an agreement requiring all plaintiffs to submit their claims to arbitration. Plaintiffs deny that a valid arbitration agreement exists and question the authenticity of the Customer Agreement.
As an initial matter, we note that the denial of a motion to compel arbitration is interlocutory in nature. See Raspet v. Buck, 147 N.C.App. 133, 135, 554 S.E.2d 676, 677 (2001). However, this Court has held that "`[t]he right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable.'" Boynton v. ESC Med. Sys., Inc., 152 N.C.App. 103, 106, 566 S.E.2d 730, 732 (2002) (quoting Howard v. Oakwood Homes Corp., 134 N.C.App. 116, 118, 516 S.E.2d 879, 881 (1999)).
If a party claims that a dispute is covered by an agreement to arbitrate but the adverse party denies the existence of an arbitration agreement, the trial court shall determine whether an agreement exists. See N.C.G.S. § 1-567.3 (2001). "The question of whether a dispute is subject to arbitration is an issue for judicial determination." Raspet, 147 N.C.App. at 136, 554 S.E.2d at 678 (citing AT & T Technologies v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This determination involves a two-step analysis requiring the trial court to "ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether `the specific dispute falls within the substantive scope of that agreement.'" Raspet, 147 N.C.App. at 136, 554 S.E.2d at 678 (quoting PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990)).
A dispute can only be settled by arbitration if a valid arbitration agreement exists. N.C.G.S. § 1-567.2 (2001). "[T]he party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." Routh v. Snap-On Tools Corp., 108 N.C.App. 268, 271-72, 423 S.E.2d 791, 794 (1992); see Thompson v. Norfolk S. Ry. Co., 140 N.C.App. 115, 120, 535 S.E.2d 397, 400 (2000). "The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." Sciolino v. TD Waterhouse Investor Servs., Inc., 149 N.C.App. 642, 645, 562 S.E.2d 64, 66 (citing Routh, 108 N.C.App. at 272, 423 S.E.2d at 794), disc. review denied, 356 N.C. 167, 568 S.E.2d 611 (2002). However, the trial court's determination of whether a dispute is subject to arbitration is a conclusion of law that is reviewable de novo on appeal. Raspet, 147 N.C.App. at 136, 554 S.E.2d at 678; Brevorka v. Wolfe Constr., Inc., 155 N.C.App. 353, 356, 573 S.E.2d 656, 659 (2002), disc. review denied, 357 N.C. 61, 579 S.E.2d 385 (2003).
*581 Here, the trial court found that defendants failed to prove that a valid arbitration agreement existed between the parties. Defendants, as the parties seeking to compel arbitration, held the burden of proof. Defendant Saunders purportedly signed the Customer Agreement on 7 December 1990. Saunders was deceased at the time of the motion hearing and was therefore unavailable to testify. Freeman and Genevieve Slaughter submitted affidavits stating they were not aware that the Trust account was subject to an arbitration agreement. Defendants submitted an affidavit by Mary Raver, an employee of defendant RJFS, stating that the Customer Agreement was scanned into the Raymond James electronic filing system on 28 December 2001. Raver's affidavit generally described the process for entering customer agreements and other documents in the RJFS computer system. This affidavit did not indicate that she witnessed Saunders sign the Customer Agreement and did not explain why the Customer Agreement was scanned into the filing system eleven years after it was allegedly signed. Defendants did not present any evidence whatsoever concerning, e.g., the general business practices surrounding the signing of similar customer agreements, or whether it was the usual policy of RJA advisors to require prospective clients to sign such agreements before providing investment advice and other services. We note that defendants submitted an affidavit by defendant Swicegood in support of their motion for reconsideration. In this affidavit, Swicegood stated that he witnessed Saunders sign the Customer Agreement. Because Swicegood's affidavit was not before the trial court when it heard the motion to compel arbitration, it cannot be considered by this Court in determining whether the court erred in refusing to find a binding arbitration agreement.
Defendants' motion to compel was based upon the validity of the arbitration agreement contained within the Customer Agreement. On these facts, the trial court could properly find that there was not a binding arbitration agreement. The trial court's findings of fact are supported by competent record evidence and support its conclusion that no arbitration agreement existed between the parties. This assignment of error is overruled.
Defendants further argue that the trial court erred by denying their motion to reconsider the 31 October 2002 order.
The order denying the motion to compel arbitration is interlocutory in nature. Defendants' brief states that the original order filed 31 October 2002 and the order denying the motion to reconsider were both interlocutory orders. Defendants contend that the 31 October order denying the motion to compel arbitration affected a substantial right and should be reviewed on appeal. However, defendants failed to offer any grounds justifying appellate review of the 3 January 2003 order denying the motion for reconsideration.
The North Carolina Rules of Appellate Procedure require a statement asserting grounds for appellate review:
When an appeal is based on Rule 54(b) of the Rules of Civil Procedure, the statement shall show that there has been a final judgment as to one or more but fewer than all of the claims or parties and that there has been a certification by the trial court that there is no just reason for delay. When an appeal is interlocutory, the statement must contain sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.
N.C.R.App. P. 28(b)(4). "`[I]t is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal ... and not the duty of this Court to construct arguments for or find support for appellant's right to appeal[.]'" Thompson, 140 N.C.App. at 121, 535 S.E.2d at 401 (quoting Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co., 135 N.C.App. 159, 162, 519 S.E.2d 540, 543 (1999)); see Munden v. Courser, 155 N.C.App. 217, 574 S.E.2d 110 (2002). The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal. Wiseman v. Wiseman, 68 N.C.App. 252, 255, 314 S.E.2d 566, 567 (1984). As a result of defendants' failure to argue why this Court should review the 3 *582 January 2003 interlocutory order, we dismiss this assignment of error.
Defendants also contend that Freeman and Genevieve Slaughters' claims should have been dismissed because they do not have standing to sue individually. Defendants argue that Trustee James Slaughter's lawsuit on behalf of the Trust adequately represents Freeman and Genevieve Slaughters' individual interests as beneficiaries. The Slaughters contend that they have standing to sue individually resulting from defendant Swicegood's direct representations to them as settlors and beneficiaries of the Trust. On the facts presented in this case, the Slaughters' argument is unpersuasive.
The North Carolina Rules of Civil Procedure require that "[e]very claim shall be prosecuted in the name of the real party in interest." N.C.G.S. § 1A-1, Rule 17(a) (2003). "A real party in interest is `a party who is benefited or injured by the judgment in the case' and who by substantive law has the legal right to enforce the claim in question." Carolina First Nat'l Bank v. Douglas Gallery of Homes, 68 N.C.App. 246, 249, 314 S.E.2d 801, 802 (1984) (quoting Reliance Ins. Co. v. Walker, 33 N.C.App. 15, 18-19, 234 S.E.2d 206, 209 (1977)). A party has standing to initiate a lawsuit if he is a "real party in interest." See Energy Investors Fund, L.P. v. Metric Constructors, Inc., 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000) (citing Krauss v. Wayne County DSS, 347 N.C. 371, 373, 493 S.E.2d 428, 430 (1997)). A motion to dismiss a party's claim for lack of standing is tantamount to a motion to dismiss for failure to state a claim upon which relief can be granted according to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. See Street v. Smart Corp., 157 N.C.App. 303, 305, 578 S.E.2d 695, 698 (2003). An appellate court should review a trial court's order denying a motion for failure to state a claim "to determine `whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" Hargrove v. Billings & Garrett, Inc., 137 N.C.App. 759, 760, 529 S.E.2d 693, 694 (2000) (quoting Shell Island Homeowners Ass'n. Inc. v. Tomlinson, 134 N.C.App. 217, 225, 517 S.E.2d 406, 413 (1999)).
This Court has recognized that when an individual grantor places his property in an active trust, the grantor's legal title to that property passes to the trustee. See In Re Estate of Washburn, 158 N.C.App. 457, 581 S.E.2d 148 (2003); Lentz v. Lentz, 5 N.C.App. 309, 168 S.E.2d 437 (1969); Mast v. Blackburn, 248 N.C. 231, 102 S.E.2d 812 (1958). The common law rule provides that any injury to the property placed in a trust may only be redressed by the trustee. That rule is summarized as follows:
The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct. Although the beneficiary is adversely affected by such acts of a third person, no cause of action inures to him on that account. The right to sue in the ordinary case vests in the trustee as a representative.
....
In the absence of special circumstances, the beneficiary is not eligible to bring or enforce these causes of action which run to his trustee. Thus in the usual case he cannot sue a third person to recover possession of the trust property for himself or the trustee, or for damages for conversion of or injury to the trust property, or for recovery of its income or to compel an agent of the trustee to account, or to enjoin a threatened injury to trust property by a third person.
George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 869 at 112-13, 115-17 (rev.2d ed.1995).
Several exceptions to the common law rule barring individual lawsuits by beneficiaries have been recognized. When the beneficiary is in actual physical possession of trust property, he can sue for injury *583 to the possession or to enjoin a disturbance of possession of the property. See Bogert, § 869 at 117; Restatement (Second) of Trusts § 281. If a conflict of interest arises between the trustee and a beneficiary, or between two beneficiaries, a beneficiary has standing to sue individually. See Bogert, Law of Trusts, § 593 at 422 (rev.2d ed.1980). Also, if the trustee refuses or fails to initiate a meritorious lawsuit against a third party, the beneficiary may file a cause of action to protect his own interests. See Bogert, § 869 at 118-21. This exception to the common law rule is outlined in the Restatement (Second) of Trusts, § 282:
(1) Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the property free of trust, the beneficiary cannot maintain a suit in equity against the third person, except as stated in Subsections (2) and (3).
(2) If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person.
(3) If the trustee cannot be subjected to the jurisdiction of the court or if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such suit is necessary to protect the interest of the beneficiary.
Restatement (Second) of Trusts, § 282. North Carolina has not expressly adopted § 282, although our Supreme Court has recognized the Restatement (Second) of Trusts as persuasive authority. See Fortune v. First Union Nat. Bank, 323 N.C. 146, 149, 371 S.E.2d 483, 484 (1988). Several jurisdictions have adopted § 282 to prevent lawsuits by individual beneficiaries unless subsection (2) or (3) applies. See Orentreich v. Prudential Insurance Co., 275 A.D.2d 685, 713 N.Y.S.2d 330 (2000) (holding that only trustee could seek rescission of insurance policies owned by trust); Pillsbury v. Karmgard, 22 Cal.App.4th 743, 27 Cal.Rptr.2d 491 (1994) (holding that a beneficiary did not have standing to sue unless beneficiary showed that trustee's refusal to bring lawsuit against third party was negligent or improper); Anderson v. Dean Witter Reynolds, Inc., 841 P.2d 742 (Utah Ct.App.1992) (holding that beneficiary had standing to sue when trustee failed to bring lawsuit against brokerage firm that distributed assets in violation of trust agreement); Axelrod v. Giambalvo, 129 Ill. App.3d 512, 84 Ill.Dec. 703, 472 N.E.2d 840 (1984) (applying Restatement (Second) of Trusts § 282 to hold that plaintiff trust beneficiaries did not have standing to sue former trustee for breach of fiduciary duty when successor trustee withdrew complaint filed on behalf of the trust); Appollinari v. Johnson, 104 Mich.App. 673, 305 N.W.2d 565 (1981) (holding that beneficiaries' guardian did not have standing to sue a third party because the trustee held title to trust assets).
North Carolina courts have granted beneficiaries standing to sue individually for breach of fiduciary duty against current trustees who allegedly mismanaged trust funds. See Fortune, 323 N.C. 146, 371 S.E.2d 483. The Fortune holding is consistent with Section 282 of the Restatement (Second) of Trusts and the common law "conflict of interest" exception allowing a lawsuit by the beneficiary.
Freeman and Genevieve Slaughter contend that their status as settlors of the Trust provides them with standing to sue individually. The Slaughters offer no support for their contention that the status of settlor, standing alone, provides them with standing. Consistent with prior holdings, title to property placed in a trust passes to the trustee. The Slaughters' argument that they have standing because they were the settlors of the Trust fails.
Freeman and Genevieve Slaughter also argue that they have standing to sue as beneficiaries. However, the facts presented in the instant case do not fit within any exception to the common law rule to allow the Slaughters standing to sue as beneficiaries. Here, individual beneficiaries and the successor trustee are suing a former trustee, now a third party to the Trust, simultaneously. Trustee Slaughter issued the complaint on behalf of all plaintiffs, with identical claims against all defendants. The plaintiffs' complaint fails to differentiate between the *584 alleged harm done to the Trust, the harm to the charitable remainder beneficiary and any injury to the Slaughters as individual beneficiaries. Freeman and Genevieve Slaughter do not claim that Trustee Slaughter's lawsuit on behalf of the Trust will fail to repair any injury accruing to them as individual beneficiaries. They fail to allege any conflict of interest between the charitable and lifetime beneficiaries or between the beneficiaries and Trustee Slaughter. No party disputes that the trial court had jurisdiction over all defendants. Trustee Slaughter did not refuse or neglect to bring an action against defendants to protect the Trust. Taking all of the allegations in the complaint as true, Freeman and Genevieve Slaughter failed to allege any facts that would allow them to sue individually under an exception to the common law rule barring individual claims by beneficiaries. Accordingly, we hold that the trial court erred in concluding that the Slaughters had standing to pursue their individual claims against defendants.
We affirm the portion of the 31 October 2002 order denying the motion to compel arbitration and reverse the portion allowing Freeman and Genevieve Slaughters' individual claims against defendants.
Affirmed in part; reversed in part; dismissed in part.
Chief Judge EAGLES concurred prior to 31 January 2004.
Judge MARTIN concurs.