SANDRA YOST, AS TRUSTEE AND BENEFICIARY OF THE RESEARCH CENTER TRUST AND CATHERINE CALDWELL, VICKIE KING, AND LESLEE KULBA, AS TRUSTEES OF THE RESEARCH CENTER TRUST, PLAINTIFFS, DYNAMIC SYSTEMS, INC., INTERVENOR PLAINTIFF v. ROBIN YOST AND SUSAN YOST, INDIVIDUALLY AND IN THEIR CAPACITIES AS TRUSTEES AND TRUST PROTECTORS OF THE RESEARCH CENTER TRUST, DEFENDANTS

No. COA10-957

(Filed 19 July 2011)

**1. Appeal and Error— interlocutory orders and appeals— partial summary judgment—certified for immediate appeal**

An immediate appeal was allowed from a partial summary judgment order where the trial court properly certified the case for immediate appeal.

**2. Trusts— enforcement of trust provisions—standing—corporation owned by trust**

A corporation that was owned by a trust did not have standing to sue the trustees to enforce trust provisions concerning successor trustees where it was not the beneficiary of the trust.

**3. Trusts— successor trustees—former trustees— standing**

Former trustees had standing to bring an action concerning the trust provisions for successor trustees, despite the rule that only beneficiaries and co-trustees have standing to sue to enforce a trust, where a part of the controversy was whether defendants wrongly prevented plaintiffs from renewing their trusteeships.

**4. Trusts— successor trustees—trust provisions**

The trial court did not err in interpreting a trust provision concerning successor trustees and in granting a motion for partial summary judgment. The plain language of the trust provision supported the trial court's interpretation, which was consistent with the purposes of the trust. The matter was remanded for removal of certain language from the court's order that reached too far and was not supported by the agreement.

Appeal by plaintiffs and intervenor plaintiff from order entered 25 May 2010 by Judge Laura J. Bridges in Buncombe County Superior Court. Heard in the Court of Appeals 26 January 2011.

*Roberts & Stevens, P.A., by Dennis L. Martin, Jr., and Ann-Patton Hornthal, for plaintiffs.*

*Patla, Straus, Robinson & Moore, by Richard S. Daniels, for intervenor plaintiff.*

*William E. Loose for defendants.*

ELMORE, Judge.

Sandra Yost, Catherine Caldwell, Vickie King, and Leslee Kulba (together, plaintiffs) and Dynamic Systems, Inc. (DSI) (intervenor plaintiff), appeal from an order for partial summary judgment granted in favor of Robin Yost and Susan Yost (together, defendants). After careful consideration, we affirm the order of the trial court in part and reverse and remand it in part.

## I. Background

On 3 March 2005, Charles A. Yost executed a trust agreement establishing the Research Center Trust (Trust), which is the subject of this dispute. Plaintiff Sandra Yost was Charles Yost's wife, defendant Robin Yost is Charles Yost's son, and defendant Susan Yost is Charles Yost's daughter. Charles Yost died shortly after creating the Trust, on 29 March 2005.

At issue here is the process for electing successor trustees under the trust agreement. Article V of the Trust Agreement sets out the process by which trustees and successor trustees are appointed and elected. Article V states, in relevant part:

At all times, the Trustees should make every effort to have nine Trustees while any of my family members is serving as a Trustee, and to have seven Trustees while none of my family members is serving as a Trustee. After my incapacity or death, that group of Trustees shall be composed, and shall elect their own successors, as follows:

A. My wife, SANDRA T. YOST, and my son, ROBIN W. YOST, and my daughter, SUSAN Y. CARSWELL [now Yost], shall each be a Trustee as long as each, respectively, is living and not incapacitated. At least two Trustees shall be officers or directors of Dynamic Systems, Inc., or its corporate successor, as the business that provides the financial support for the trust purposes. At least two Trustees shall be members of the scientific community, not necessarily local, who are independent of the business and

the Yost family and who have an active interest and participation in research and experimentation.

B. Except for the three family members named above, each Trustee shall serve for a term of three years. If a Trustee ceases to serve for any reason prior to the expiration of his or her term, then a successor shall be elected to serve until the expiration of such predecessor Trustee's term. Trustees may serve multiple and consecutive terms without limitation, if so elected, for as long as they are willing and able to uphold the purposes of the trust.

C. Successor Trustees shall be nominated by any then-serving Trustee, and must be approved by at least two-thirds of the then-serving Trustees (excluding any Trustees who are then-serving but whose terms will be ending and whose successors are being selected). It shall be the responsibility of the Trustees to locate, interview, and approve successor Trustees within a period of not longer than six months after a vacancy occurs.

Before his death, Charles Yost appointed nine trustees, including Sandra, Robin, and Susan Yost. As the two representatives of DSI, Charles Yost appointed plaintiff Caldwell and Mimi Chang. As the other four directors, Charles Yost appointed plaintiff Leslee Kulba, Richard Hull, Yusef Fahmy, and Charles Tolley. On 28 July 2006, Tolley stepped down and Rebecca Bruce replaced him. On 20 April 2007, Chang stepped down and plaintiff King replaced her.

On 8 December 2006, defendant Robin Yost gave notice of his resignation as a trustee. In his letter, he wrote, "I do not feel my role as a trustee furthers the business of the trust. Also as I see potential conflict of interest by being both a trustee and beneficiary." However, on 10 December 2007, defendant Robin Yost gave notice of his return as a trustee.

On 25 January 2008, the trustees held their annual meeting, and all nine trustees attended, including defendant Robin Yost, who was reinstated as a trustee at the beginning of the meeting. In addition, John Kelso, Charles Yost's attorney and one of three designated trust protectors, also attended. The terms of the six non-Yost-family trustees would expire in March 2008, so the nomination and approval of successor trustees was on the agenda for the annual meeting. However, the trustees never approved successor trustees because defendants introduced amendments to the trust agreement that

would significantly alter the number and makeup of the board of trustees,[1] disrupting the meeting.

On 12 November 2008, plaintiffs Sandra Yost, Caldwell, King, and Kulba sued defendants, seeking a temporary restraining order and preliminary injunction to prevent defendants from acting as trustees and trust protectors during the pendency of the action, a declaratory judgment voiding any actions taken by defendants as trustees or trust protectors since 25 January 2008, and an amendment to the trust agreement. The complaint also alleged that defendants had breached their fiduciary duties under the trust agreement and had committed constructive fraud.

On 16 January 2009, defendants answered, alleging three affirmative defenses, including standing. Defendants alleged that plaintiffs Caldwell, King, and Kulba lacked standing to bring any action regarding the Trust because their terms had expired in March 2008. Defendants also counterclaimed, seeking a declaratory judgment construing the language in the trust agreement with respect to the selection of successor trustees for the Trust.

On 18 March 2009, DSI moved to intervene as a plaintiff. On 4 May 2009, the trial court allowed DSI's motion, and DSI became an intervenor plaintiff. On 9 May 2009, DSI filed its own complaint against defendants. Like the original plaintiffs, DSI sought an injunction and declaratory judgment as well as amendment of the trust agreement. In addition, DSI sought the removal of defendants as trust protectors and an affirmation or reinstatement of the six non-family trustees until successor trustees have been nominated and approved.

On 19 February 2010, defendants moved for partial summary judgment. Defendants sought a summary judgment declaring "[t]he meaning of the language of Article V. C. *[sic]* [of the trust agreement] with respect to the selection of successor trustees," and who the current trustees are. Plaintiffs also moved for partial summary judgment.

On 25 May 2010, following a hearing, the trial court entered an order granting partial summary judgment in favor of defendants. The trial court defined the issues before it as follows:

(i) the interpretation of Article V.C. of the Research Center Trust (hereinafter the "Trust") regarding which trustees were entitled

---

1. Pursuant to Section Two of Article XI of the trust agreement, defendants, as two of the three trust protectors, "have the power to . . . amend th[e] trust agreement in any manner they deem reasonably necessary to fulfill the trust purposes." Whether the proposed amendments were proper is not currently before this Court.

to approve successor trustees of the Trust; (ii) who the current trustees are of the Trust with the right to approve successor trustees; and (iii) whether any genuine issue of material fact exists with respect to whether, as a result of alleged breaches of fiduciary and trustee duties by the Defendants, any of the non-family trustees who were serving in January 2008 are currently entitled to act in any capacity or for any purpose as trustees of the trust[.]

The trial court "determined from the four corners of the Trust document that Article V.C. intends that the three Yost family member trustees (Sandra Yost, Robin Yost and Susan Yost) were the only trustees who were intended to ever be able to approve successor trustees." The court also "determined that, as a necessary result of the foregoing ruling, the three Yost family member trustees . . . are the current trustees . . . of the Trust with the right to approve successor trustees." Finally, the trial court determined that it was unnecessary to reach the third issue. The trial court decreed "[t]hat Article V.C. of the Trust shall be interpreted to mean that the three Yost family member trustees are the only trustees who are ever able to approve successor trustees." The trial court also ordered the Yost family member trustees to "first nominate and approve successors for all of the six non-family trustee positions, and those nine trustees shall thereafter be entitled to engage in other Trust business[.]"

Later that day, plaintiffs moved to stay the effect of the order of partial summary judgment, which the trial court denied. Plaintiffs appealed. This Court granted a petition for writ of supersedeas, staying the order of partial summary judgment pending the outcome of this appeal.

## II. Interlocutory Appeal

[1] As a preliminary matter, we note that the order of partial summary judgment is interlocutory, and, ordinarily, there is no right of appeal from an interlocutory order. *CBP Resources of N.C., Inc. v. Mountaire Farms, Inc.*, 134 N.C. App. 169, 170, 517 S.E.2d 151, 153 (1999). However, an interlocutory order may be immediately appealed "(1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C. R. Civ. P. 54(b) or (2) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Id.* at 171, 517 S.E.2d at 153 (quotations and citations omitted). Here, the trial court properly certified

the case for immediate appeal. Accordingly, we review the merits of plaintiffs' appeal.

## III. Arguments

### A. Standing

[2] Defendants argue that intevenor plaintiff DSI and plaintiffs Caldwell, King, and Kulba lack standing to bring claims against them. *See Forsyth County Bd. of Social Services v. Division of Social Services*, 317 N.C. 689, 692, 346 S.E.2d 414, 416 (1986) ("[Q]uestions of subject matter jurisdiction may properly be raised at any point[.]"). As this is another preliminary legal issue, we resolve it before addressing the substance of plaintiffs' appeal.

Defendants argue that DSI lacks standing to prosecute the four causes of action alleged in its complaint because DSI has no injury to redress against the Trust or its trustees. This presents the unusual situation of trust property suing the trustees. This Court has followed the rule set out in the Restatement and other jurisdictions that "only beneficiaries have standing to sue to enforce a trust." *Scott v. United Carolina Bank*, 130 N.C. App. 426, 433, 503 S.E.2d 149, 154 (1998) (citations omitted); *see Restatement (Second) of Trusts*, § 200 ("No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin redress for a breach of trust."). "A beneficiary is one for whose benefit a trust directly and specifically provides. A person who incidentally benefits from the performance of the trust, but who is not a beneficiary of the trust, cannot maintain a suit to enforce the trust." *Scott*, 130 N.C. App. at 432, 503 S.E.2d at 153-54 (quoting and citing *Restatement (Second) of Trusts*, § 126 and § 200, cmt. e). Here, the trust agreement names four trust beneficiaries: Sandra Yost, Robin Yost, Susan Yost, and Sunlight Foundation, Inc. DSI is not named as a beneficiary. Accordingly, DSI does not have standing to sue the trustees to enforce the Trust, which is the essence of DSI's complaint and the basis for this appeal. Accordingly, we do not consider intervenor plaintiff DSI's arguments on appeal.

[3] Defendants argue that plaintiffs Caldwell, King, and Kulba lack standing because they are no longer trustees—their terms having expired automatically in March 2008. An exception to the rule above, that only a beneficiary can sue to enforce a trust, is that one co-trustee has standing to sue another co-trustee "to compel him to perform his duties under the trust, or to enjoin him from committing a breach of trust, or to compel him to redress a breach of trust com-

mitted by him." *Id.*, § 200, cmt. e. Although this rule is found only in the *Restatement*, not in our caselaw, "our Supreme Court has recognized the *Restatement (Second) of Trusts* as persuasive authority." *Slaughter v. Swicegood*, 162 N.C. App. 457, 465, 591 S.E.2d 577, 583 (2004) (citing *Fortune v. First Union Nat. Bank*, 323 N.C. 146, 149, 371 S.E.2d 483, 484 (1988)). In addition, the official comment to N.C. Gen. Stat. § 36C-10-1001, "Remedies for breach of trust," states that "[b]eneficiaries and cotrustees have standing to bring a petition to remedy a breach of trust." N.C. Gen. Stat. § 36C-10-1001, cmt. (2009). Again, the essence of these plaintiffs' complaint is that defendants breached their duties as trustees and violated the trust agreement, so, as co-trustees, they would have standing to sue their fellow trustees to enforce the Trust. Defendants argue that, because these plaintiffs' terms automatically terminated in March 2008, they are no longer co-trustees and thus have no standing. However, whether defendants wrongly prevented plaintiffs from renewing their trusteeships is part of the current controversy. Holding that that these plaintiffs lack standing because their terms ended in March 2008 presumes the answer to the question before us on appeal. Accordingly, we conclude that plaintiffs Caldwell, King, and Kulba have standing to maintain this appeal.

### B. Grant of Defendants' Motion for Partial Summary Judgment

**[4]** Plaintiffs argue that the trial court erred by granting defendants' motion for partial summary judgment because the trial court misinterpreted Article V.C. of the trust agreement. We disagree.

We review an order of partial summary judgment *de novo*. *DeRossett v. Duke Energy Carolinas, LLC*, —— N.C. App. ——, ——, 698 S.E.2d 455, 458 (2010). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

> When reviewing a trial court's allowance of a summary judgment motion, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant.

*Davenport v. Cent. Carolina Bank & Trust Co.*, 161 N.C. App. 666, 671, 589 S.E.2d 367, 370 (2003) (citing *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003)).

"In construing the terms of a trust, our responsibility is to ascertain the intent of the settlor and to carry out that intent . . . deriving the settlor's intent from the language and purpose of the trust, construing the document as a whole." *Id.* at 672, 589 S.E.2d 370 (quotations and citation omitted).

> In determining the intent of a trustor the court is not limited to a determination of what is meant by a particular phrase or word. A trust indenture is but the expression of a settlor's intention reduced to writing, and it is often necessary to go to the "four corners" of the instrument in order to gather a full understanding of his intent. That intent is determined by the language he chooses to convey his thoughts, the purposes he seeks to accomplish, and the situation of the other parties to or benefited by the trust.

*Davison v. Duke Univ.*, 282 N.C. 676, 707, 194 S.E.2d 761, 780 (1973) (quotations and citations omitted).

Here, the section of the trust agreement at issue, V.C., states that "Successor Trustees shall be nominated by any then-serving Trustee, and must be approved by at least two-thirds of the then-serving Trustees (excluding any *Trustees* who are then-serving but whose terms will be ending and whose successors are being selected)." (Emphasis added.) Plaintiffs argue that this language means that trustees whose terms are expiring participate in the approval of successor trustees for every open trustee position except their own. In other words, if there are nine trustees and six of their terms are expiring, two-thirds of eight of the trustees must approve the successor trustee for the ninth trustee's position. The trial court's interpretation, however, is that all trustees whose terms are expiring cannot participate in the approval of successor trustees. In the scenario above, only two-thirds of the three trustees whose terms are not expiring need to approve each successor trustee. The plain language of this section supports the trial court's interpretation. The use of the plural "Trustees" rather than the singular "Trustee" in the parenthetical encompasses all trustees whose terms are ending, not just one trustee whose term is ending and whose successor is being voted on.

The purposes of the Trust, as set out in the trust agreement, are not inconsistent with the trial court's interpretation of Section V.C. Article IV of the Trust sets out the purposes of the Trust. The text of Article IV follows in its entirety:

> Following is a statement of the purposes for which this trust has been created. I intend that the Trustees shall administer the

trust in furtherance of these purposes, and that any disagreement regarding the trust administration or interpretation shall be resolved by reference to this statement of the trust purposes.

A. **Yost Family.** To provide for the welfare of my wife and children during their lifetimes by providing them with the right to reside on the property in Madison County that has heretofore been owned by my wife and me, and within reasonable limitations to use such property to pursue their personal interests; and to provide them with support to ensure adequate healthcare and a reasonable standard of living similar to the standard that they presently enjoy.

B. *Research.* To enable the nonprofit scientific and educational activities of the Sunlight Foundation, Inc., independent of any profit-motivated or political bias; and within or outside of the Foundation to encourage continuous and continual research efforts, provided that no efforts or assets shall be for imposing or destructive purposes. In particular, the trust should encourage individual research in the natural and physical sciences, in all phases, including study, conjecture, experimentation, observation, analysis, evaluation, and the pursuit of knowledge and understanding, provided that the motive for all of the foregoing is compatible with natural ecological balances and peaceful human coexistence.

C. **Business.** To continue and develop the operation of Dynamic Systems, Inc. ("DSI") and Electric Spacecraft, Inc. ("ESI") as profitable businesses primarily as a means of supporting the other trust purposes described in this Article; and to ensure good wages, benefits, and working conditions for the employees of those businesses; and to uphold and even improve the business' high standards for quality products, customer service, and integrity in business practices.

D. **Continuation of Purposes.** To manage the property, stock, and other trust assets in a way that will allow this trust and its purposes to continue intact into the future, throughout and beyond the lifetimes of my wife and children; and to ensure that people and organizations involved with the trust, either as Trustees or contributors or otherwise, understand and share the educational and research goals described herein.

Nothing in the articulated purposes of the Trust contradicts our plain language reading of Section V.C. It is, however, evident from the artic-

ulated purposes that Charles Yost intended to provide for his family and that the continued operation and development of DSI was a "means of supporting the other trust purposes," including providing for the Yost family. The practical effect of our interpretation of Section V.C. is that only the three Yost trustees can approve successor trustees. Plaintiffs argue that giving the Yost family so much control over the Trust violates Charles Yost's intent, but it is apparent to us that Charles Yost intended to keep his family deeply involved with the Trust.

The paramount importance of the Yost family to Charles Yost, as grantor, is evident throughout the trust agreement: Sandra, Robin, and Susan Yost are trustees for the duration of their lifetimes; the Yosts cannot be removed as trustees; the Yosts are three of the four named beneficiaries of the Trust; although the Yost trustees "shall have no special voting rights, . . . it is [Charles Yost's] intent that all Trustees shall give special consideration to the requests and concerns of the Yost family, consistent with the trust's stated purposes"; in the event of the Trust's failure, seventy-five percent of the trust property will be distributed to the three Yosts; and Robin and Susan Yost were appointed to be two of the three trust protectors, meaning they had the power to amend the trust agreement.

It is possible for the three Yost trustees to stagger their appointments of successor trustees so that their terms do not all expire at the same time, which would resolve the practical objection raised by plaintiffs. It also appears possible for the trust protectors to amend the trust agreement to change Section V.C. or to establish staggered terms for trustees.

Accordingly, with one caveat, we agree with the trial court's interpretation of the trust agreement. That caveat is the trial court's statement that Sandra, Robin, and Susan Yost "were the only trustees who were intended to ever be able to approve successor trustees." This statement reaches too far and is not supported by the trust agreement. Charles Yost specifically intended the Trust to survive his wife and children, and declaring that his wife and children are "the only trustees who were intended to ever be able to approve successor trustees" is not consistent with this specific intention. Moreover, as explained above, it is possible for other trustees to approve successor trustees by staggering terms or amending the trust agreement or when replacing a trustee who departs before the end of his or her term.

Therefore, we affirm the order in part and reverse in part, remanding for the sole purpose of removing the language from paragraphs three and eight of the order stating that only the three Yost family member trustees can approve successor trustees.

### C. Denial of Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs also argue that the trial court erred by denying their motion for partial summary judgment, in which they asked the trial court to declare that non-Yost-family trustees can approve successor trustees. For the reasons stated above in III.C., this argument fails.

### IV. Conclusion

We affirm the order of partial summary judgment in part, reversing and remanding for the sole purpose of removing the language from paragraphs three and eight of the order stating that only the three Yost-family-member trustees can approve successor trustees.

Affirmed in part; reversed and remanded in part.

Judges STEELMAN and ERVIN concur.