MURDOCK, Justice
(dissenting).
As a preliminary matter, I wish to note that the issue of “standing” referenced in the main opinion is an issue that goes to the cognizability under Alabama law of a claim when a trust beneficiary has not first made the requisite demand upon the trustee to pursue a claim against a third party based on actions allegedly detrimental to the trust and to the beneficiary, not whether the beneficiary has experienced an actual, concrete injury of the nature intended when courts speak of “standing” in the sense of what is necessary for a constitutionally sufficient “case or controversy” and, in turn, subject-matter jurisdiction. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[7]
That said, I turn now to the merits of the issue whether the claims against Cal-Ian Associates, Inc., in this case should have been dismissed because of the failure of the plaintiff to have made a presuit demand upon the PACT board (sometimes referred to herein as “the board”) to file an action against Callan.
The fundamental premise upon which the complaint in the present case is based is that the investments made by the board were not prudent investments. By statute, the responsibility for investing the trust fund falls with the PACT board, the trustees of the fund. It is the board that is empowered by law to invest the money as it deems appropriate and to retain such consultants and administrative assistance to assist in this endeavor as it deems appropriate.[8]
The board entered into a contractual relationship with Callan pursuant to which Callan was to advise it and to help administer the trust fund. Even in the context of this contractual relationship, of course, ultimate responsibility remained with the board.[9]
*1170 In Blackburn v. Fitzgerald, 130 Ala. 584, 588, 30 So. 568, 568 (1901), this Court stated that before beneficiaries of a trust “can proceed by [a] bill in equity for the enforcement of equitable rights” on behalf of the trust, they “must first move the trustee to act or show some sufficient reason ” why this should not be required (emphasis added). The complaint here alleges concerted action between the trustees and Callan; indeed, the trustees and Callan are named as codefendants. The complaint alleges that the trustees hired Cal-lan in the first place, worked in concert with Callan, and had the ultimate responsibility to assess and act upon Callan’s recommendations as the board deemed prudent.
In addition to the foregoing, before this action was filed, the trustees already had been sued in one or more other actions in which, according to the complaint, they had been accused of “negligence, breach of contract and other misfeasance in connection with the administration, delegation and performance of their duties in connection with the trust.” According to the complaint, the fact that the trustees already faced liability based on such allegations created a “conflict of interest” insofar as expecting them to file an action against Callan alleging that the investments they made based upon Callan’s advice had been imprudent.
In Tillery v. Tillery, 155 Ala. 495, 498, 46 So. 582, 582 (1908), the Court noted the general rule of trust and estate law that the right and obligation to pursue a legal claim on behalf of an estate (whether a trust estate or a decedent’s estate) belongs to the person who holds legal title to the estate and who has the legal obligation to preserve and administer the estate, i.e., the trustee of a trust or the personal representative of a decedent’s estate. The Tille'ry Court then spoke of three exceptions to the general rule that a beneficiary cannot “institute any proceeding for the enforcement of any claim which [a trust] held against others”: the beneficiary can show (1) that the trustee has refused to institute a proceeding for enforcement of the claim, (2) that the trustee is “in collusion” with the person against whom the claim would be asserted, or (3) that the trustee “occupied a position [such that asserting the claim would be] antagonistic to his duties as [trustee],” i.e., the trustee has a conflict of interest. 155 Ala. at 498, 46 So. at 582-83. As the main opinion notes by relying on the extended quotation from Slaughter v. Swicegood, 162 N.C.App. 457, 464-65, 591 S.E.2d 577, 582-83 (2004) (emphasis added), which in turn quotes George G. Bogert & George T. Bogert, The Law of Trusts and Tnstees § 869 at 112-13, 115-17 (rev.2d ed.1995), a well respected treatise on trust law, “ ‘ “[i]n the absence of special circumstances, the beneficiary is not eligible to bring or enforce ... causes of action which run to his trustee.” ’ ” 87 So.3d at 1166. But “ ‘[iff a conflict of interest arises between the trustee and a beneficiary, or between two beneficiaries,’” “‘the beneficiary may file a cause of action to protect his own interests. See Bogert, § 869 at 118-21.’” 87 So.3d at 1166 (quoting Slaughter, 162 N.C.App. at 465, 591 S.E.2d at 583 (emphasis added)).[10]
*1171 The main opinion states that it “appears to defy logic” to think that the PACT board should be asked to sue itself. 87 So.3d at 1167. It would seem that asking the board to sue Callan would be the next closest thing. It would amount to asking the trustees to sue the administrative entity they chose to hire and with whom they have acted in concert. Moreover, the central premise of such a suit, and thus a judicial admission that would have been necessary on the part of the board in order to file such a suit, would have been that the investments made by the board were not prudent. The notion that these investments made by the board were not prudent is exactly the cause for which the board itself faced criticism and potential and actual legal claims.[11] Given the joint efforts of the trustees and Callan in managing the trust fund, with the trustees having final decision-making authority, and given the threatened and pending claims against the trustees, I must conclude that exceptions of the nature contemplated in the above-cited authorities are applicable in this case.
Respectfully, therefore, I must dissent.
PARKER, J., and SHORES, Special Justice, concur.

."[0]ur courts too often have fallen into the trap of treating as an issue of ‘standing’ [and therefore as an issue of subject-matter jurisdiction] that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action.” Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 (Ala.2010). Cf. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, Jurisdiction § 3531 (3d ed.2008) ("The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms."). See also Altrust Fin. Servs., Inc. v. Adams, 76 So.3d 228, 247 (Ala.2011) (Murdock, J„ concurring in the result).

. The PACT board members specifically are empowered "to invest as they deem appropriate any funds in the PACT Trust Fund....” § 16 — 33C—5(3), Ala.Code 1975. In fulfilling this responsibility, the PACT board is to make decisions as to "acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property of the PACT Trust Fund” and, in so doing, is charged with "exercising the judgment and care under the circumstances then prevailing which a person of prudence, discretion, and intelligence exercises in the management of their own affairs, not in regard to speculation but to permanent disposition of funds, considering the probable income as well as the safety of their capital.” § 16-33C-6(d), Ala.Code 1975.

. Although the trustees may have enlisted Cal-lan’s help in administering the trust fund, their duties as trustees obviously were not delegable.

. Ultimately, the main opinion places great reliance upon the fact that this is not a case in which it has been shown that a demand upon the trustees would have been "futile.” It borrows this futility standard from James v. James, 768 So.2d 356, 360 (Ala.2000), a case involving the prerequisites for filing shareholder-derivative actions on behalf of corporations. Although the main opinion bases its reliance upon James on the ground that a shareholder-derivative action is "analogous” to a suit by a trust beneficiary, 87 So.3d at 1167 n. 5, the fact that the two are analogous does not make them the same. I believe the *1171 exceptions articulated as to trust and estate cases, as cited, particularly the "conflict of interest” standard, are more appropriate for such cases than a "futility” standard.
Even accepting for the sake of argument the applicability of the so-called "futility” standard developed for shareholder-derivative actions, however, I note that this standard is deemed satisfied when the shareholder demonstrates sufficient " 'antagonism between the directors and the corporate interest! ] that the directors would be incapable of performing their duty.’ " James, 768 So.2d at 360 (quoting Elgin v. Alfa Corp., 598 So.2d 807, 815 (Ala.1992)). Even more specifically in this regard, we have recognized that, "if the directors themselves are the alleged wrongdoers, the demand may be futile.” Elgin, 598 So.2d at 814.

. By the time the plaintiff filed the present action, it was known, of course, that the investments at issue had not “work[ed] out” as planned. That this fact was known at that time, i.e., in hindsight, did not and does not answer the question whether these investments were imprudent when the investments were made, i.e., when viewed from the vantage point of the information known and the circumstances existing at the time the investments were made, including information specific to the particular investments, the history of the economy and relevant markets, and the nature of the other investments maintained at the time by the PACT board. To have required the board to bring an action against Callan before any determination of liability on the board's part, therefore, would have been to require the board to make an allegation, and a judicial concession, that the investments the board itself had made were imprudent investments at the time the board made them, a proposition that had not (and has not) been established but that would be central to any potential liability on the part of the board. (Contrary to the suggestion in note 6 of the main opinion, 87 So.3d at 1167, it was this presuit juxtaposition of the parties, not some evidence of what the board’s actual postsuit position turned out to be, that makes for the requisite "conflict of interest” — -i.e., a conflict between the interests of the trustees and the interests of the plaintiff — that in turn made a presuit demand on the board unnecessary.)