BOLIN, Justice.
James R. Adams, Stanley Dye, and Ed Holcombe (collectively referred to as “the plaintiffs”), individual shareholders in Al-trust Financial Services, Inc. (“Altrust”), sued Altrust; Peoples Bank of Alabama (“the Bank”); J. Robin Cummings, Whit Drake, N. Jasper Estes, Cecil Alan Walker, Terry Neal Walker, Timothy Dudley Walker, and Brian C. Witcher (“the individual defendants”)[1] (Altrust, the Bank, and the individual defendants will be referred to collectively as “the Altrust defendants”); and Dixon Hughes, PLLC, Al-trust’s and the Bank’s public-accounting firm, on December 4, 2009, asserting a claim against all defendants for violating the Alabama Securities Act, § 8-6-1 et seq., Ala.Code 1975 (count I); a professional-negligence claim against Dixon Hughes (count II); and a negligence claim against the Altrust defendants (count III).[2]
On January 7, 2010, the Altrust defendants moved the trial court pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss the claims asserted against them by the plaintiffs. On January 8, 2010, the plaintiffs amended their complaint to add 10 additional plaintiffs. The Altrust defendants then moved the trial court pursuant to Rule 12(b)(6) to dismiss the plaintiffs’ first amended complaint. On January 25, 2010, Dixon Hughes moved the trial court pursuant to Rule 12(b)(6) to dismiss the claims asserted against it.
On February 12, 2010, the plaintiffs amended their complaint a second time to add two additional plaintiffs and to assert additional claims of aiding and abetting a fraud against two of the individual defendants and conspiracy against the Altrust defendants. All the defendants moved *232 pursuant to Rule 12(b)(6) to dismiss the plaintiffs’ second amended complaint.
On March 9, 2010, the plaintiffs amended their complaint a third time, restating the prior complaint and adding allegations of fraudulent suppression in count III as to the Altrust defendants. On March 23, 2010, all defendants moved the trial court pursuant to Rule 12(b)(6) to dismiss the claims asserted against them in the plaintiffs’ third amended complaint. On April 6, 2010, the trial court entered an order denying the motions to dismiss the plaintiffs’ claims asserted in the third amended complaint.
On April 21, 2010, the Altrust defendants moved the trial court to set aside its April 6, 2010, order denying their motions to dismiss and moved the trial court to set a hearing on the motions to dismiss the plaintiffs’ third amended complaint. In the alternative, the Altrust defendants sought a permissive appeal pursuant to Rule 5, Ala. R.App. P. On April 28, 2010, Dixon Hughes joined the motion to set aside or, in the alternative, for a permissive appeal pursuant to Rule 5, Ala. R.App. P. The trial court granted the motions to set aside and set a hearing on the motions to dismiss the plaintiffs’ third amended complaint. On July 30, 2010, the plaintiffs filed their consolidated response in opposition to the motions to dismiss the third amended complaint.
Following the hearing, the trial court, on August 10, 2010, entered an order dismissing the claims alleging securities fraud, aiding and abetting, and conspiracy. The trial court denied the motions to dismiss as to the professional-negligence claim against Dixon Hughes and the negligence claims against the Altrust defendants. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. The plaintiffs appeal the dismissal of their claim alleging securities fraud (case no. 1091759).[3] The Altrust defendants appeal by permission pursuant to Rule 5, Ala. RApp. P., the denial of their Rule 12(b)(6) motion seeking a dismissal of the negligence claim asserted against them (case no. 1091610). Dixon Hughes appeals by permission pursuant to Rule 5, Ala. R.App. P., the denial of its Rule 12(b)(6) motion seeking a dismissal of the professional-negligence claim asserted against it (case no. 1091620). We have consolidated these three appeals for the purpose of writing one opinion.

Facts as Alleged in the Third Amended Complaint

Altrust is a holding company that fully owns, controls, and directs the operations of the Bank. Altrust and the Bank share common officers and directors and issue consolidated financial statements. Dixon Hughes is a public-accounting firm that completed audits of and prepared financial reports for Altrust and the Bank in 2005 and 2006.
In January 2008, Altrust notified its shareholders of a meeting of the shareholders to be held on February 12, 2008, in order to vote on an agreement and plan of reorganization of the company. Altrust sought to reorganize the company by changing its status from a publicly held company to a privately held company. The change in status from a publicly held company to a privately held company was to be accomplished by reducing the number of shareholders to below 300, which would free the company of certain reporting obligations imposed by the Securities Exchange Act of 1934 and would also allow *233 the company to elect Subchapter S status for taxation purposes. Altrust included with its letter a proxy statement, as required by the Securities and Exchange Commission (“the SEC”) to ensure full disclosure to the shareholders of the proposed transaction. Before Altrust’s January 2008 letter and proxy statement to the shareholders, the SEC had issued a letter to Altrust commenting on Altrust’s preliminary draft of the proxy statement and urging it to be forthcoming with the shareholders. The SEC letter stated:
“We urge all persons who are responsible for the accuracy and adequacy of the disclosure in the filings reviewed by the staff to be certain that they have provided all material information to investors. Since the company and its management are in possession of all facts relating to a company’s disclosure, they are responsible for the accuracy and adequacy of the disclosures they have made.”
The proxy statement provided to the shareholders by Altrust set forth the plan and purpose of the proposed reorganization:
“Reorganization
“The reorganization plan provides for substantially reducing the number of our shareholders to below 300 holders of record for SEC purposes so that we can suspend our obligation to file periodic reports with the SEC under the Securities Exchange Act of 1934. The reorganization is also intended to permit us to elect to be taxed under Subchapter S of the Internal Revenue Code of 1981 or the ‘Code’ at the earliest date when a Subchapter S election can become effective. The reorganization will be accomplished through the merger of Holly Pond Corp., an Alabama corporation and our wholly owned subsidiary that we organized solely to facilitate the reorganization stock (referred to in this proxy statement as Holly Pond), with and into Altrust. If the reorganization plan is approved by our shareholders, certain shares of Altrust common stock held by our smaller shareholders and persons who are not or who elect not to become eligible shareholders for Subchapter S purposes will be converted into the right to receive $17.25 in cash....
“Purpose of the Reorganization Plan
“The primary purposes of the reorganization plan are to eliminate our obligation to file periodic reports with the SEC under the Securities Exchange Act, which we expect will result in a significant decrease in expenses and administrative burdens related to ongoing regulatory compliance and reporting matters, and to promote more efficient capital utilization and enhance shareholder value by reducing the combined taxes we and our shareholders currently pay by electing to be taxed under Subchapter S of the Internal Revenue Code. We intend to elect to be taxed under Subchap-ter S as soon as possible following the effective time of reorganization. Under Internal Revenue Service rules, and assuming we qualify, we will not be taxed under Subchapter S until the tax year beginning January 1, 2009.... ”
As part of the reorganization, Altrust contemplated a mandatory repurchase of stock from some shareholders. The proxy statement provided that Altrust intended to pay $17.25 per share to any shareholder not eligible to be an S-corporation shareholder, any holder of 6,400 or fewer shares, or any shareholder who elected not to remain a shareholder of Altrust. Those shareholders who did not elect to sell their shares of Altrust stock would remain shareholders of Altrust. The proxy statement also provided that if the shareholder elections required Altrust to purchase more than 950,000 shares of stock at *234 $17.25 per share, then the .reorganization plan would not be completed.
The proxy statement also included references to Altrust’s financial reports for the years ending December 31, 2005, and December 31, 2006. These financial statements were audited by Dixon Hughes, who reported that the financial statements were “free from material misstatements.” In forms filed by Altrust with its 2006 annual financial report, Altrust represented that Dixon Hughes had evaluated its internal financial-reporting controls and noted “no material weaknesses” in those controls.
Relying upon the information contained in the proxy statement, including the financial reports, the plaintiffs elected not to sell their shares of Altrust stock at $17.25 per share. Instead, the plaintiffs voted in favor of the proposed reorganization of Altrust and signed new shareholders’ agreements thereby remaining shareholders in Altrust. As set forth -in the proxy statement, the reorganization of Altrust was facilitated by merging Holly Pond Corp., a wholly owned subsidiary of Al-trust, with and into Altrust, with Altrust remaining as the surviving corporation. There was no exchange of shares of stock in a new company, and no new stock certificates were issued by Altrust.
The plaintiffs allege that the proxy statement and the financial reports contained material misrepresentations and omissions that induced them to sign the shareholders’ agreements agreeing to remain shareholders in Altrust. Specifically, the plaintiffs allege that the proxy statement and the financial reports failed to disclose the following:
1.That prior to the reorganization, J. Robin Cummings purchased 10,000 shares of Altrust stock at $10.50 per share using a straw man to assist in the transaction so that he could then sell those shares as part of the reorganization at $17.25 per share as offered in the proxy statement;
2. That the true purpose of the reorganization was not to promote the interests of Altrust, but rather to benefit financially Cummings and the Walkers (Cecil Alan Walker, Terry Neal Walker, and Timothy Dudley Walker);
3. That Altrust and some of the individual defendants were involved in numerous violations of banking-loan requirements;
4. That Altrust was at serious financial risk as a result of improper loans made to certain borrowers in violation of banking regulations;
5. That Altrust’s general counsel was involved with certain schemes now the subject of separate fraud litigation;
6. That Altrust had disregarded numerous banking regulations involving improper loan practices, inadequate underwriting standards, and inadequate internal financial controls, among other things, putting it at risk of financial ruin;
7. That Altrust had acquired the Bank of Blountsville without adequate due diligence, had made an unsecured loan to the president of that bank on which the president had defaulted and the president of that bank was in federal prison, and had failed to reduce on its financial statements the value of the “goodwill” resulting from that failed acquisition;
8. That in 2008 Altrust’s capital was severely impaired and that other internal forces resulting from mismanagement were in motion that would further erode Altrust’s capital; and
9. That certain directors were siphoning off company assets through related-party transactions.
*235 The plaintiffs allege that if the above instances of mismanagement, self-dealing, interested-party transactions, and skewing of company liabilities had been fully disclosed, they would have elected to sell their Altrust shares at the offered price of $17.25 per share. The plaintiffs contend that based on the actual state of affairs at Altrust their shares of stock are now worth far less than the $17.25 per share value offered in the proxy statement.

Standard of Review

We review the trial court’s rulings on the plaintiffs’ claims de novo.
“The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). We note further that, as to the trial court’s dismissal of the plaintiffs’ securities-fraud claim:
“On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989).”
Nance, 622 So.2d at 299.

Case No. 1091759

The plaintiffs sued all the defendants asserting a claim of securities fraud under the Alabama Securities Act, § 8-6-1 et seq., Ala.Code 1975 (“the Act”). Specifically, the plaintiffs alleged that the defendants issued the proxy statement that contained material misrepresentations and omissions of material facts; that the misrepresentations and omissions of material facts were made in connection with the offer, sale, or purchase of shares of Altrust stock; and that, as a proximate result of the defendants’ acts and omissions in violation of the Act, the plaintiffs “relied upon the misrepresentations and omissions and were induced to sign the shareholders agreement[s], agreeing to remain as shareholders in [Altrust], instead of receiving $17.25 per share for their stock in [Al-trust]. At the times they signed the shareholder agreements, plaintiffs did so without knowledge of the facts concerning the misstatements or omissions alleged herein.”
The plaintiffs appear to allege that the defendants violated § 8-6-17(a) of the Act, which provides:
“(a) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to:
“(1) Employ any device, scheme, or artifice to defraud;
“(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
*236 “(3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.”[4]
The civil remedy provided by the Act is found at § 8-6-19, Ala.Code 1975, which provides, in part, as follows:
“(a) Any person who:
“(1) Sells or offers to sell a security in violation of any provision of this article or of any rule or order imposed under this article or of any condition imposed under this article, or
“(2) Sells or offers to sell a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission,
“is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys’ fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.
“(b)(1) Any person who engages in the business of advising others, for compensation, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analy-ses or reports concerning securities in violation of subsection (b), (c), (d), (e), or (f) of Section 8-6-17, subsection (b) or (c) of Section 8-6-3, Section 8-6-14, is liable to that person, who may bring an action to recover the consideration paid for such advice and any loss due to such advice, together with interest at six percent per year from the date of payment of the consideration plus costs and reasonable attorney’s fees, less the amount of any income received from such advice.
“(2) Any person who receives ... any consideration from another person for advice as to the value of securities or their purchase or sale ... and employs any device, scheme, or artifice to defraud such other person or engages in any act, practice, or course of business which operates or would operate as a fraud or deceit on such other person, is liable to that *237 person, who may bring an action to recover the consideration paid for such advice and any loss due to such advice, together with interest at six percent per year from the date of payment of the consideration plus costs and reasonable attorney’s fees, less the amount of any income received from such advice.”
(Emphasis added.)
The express language of § 8-6-19(a) provides a civil remedy for violations of the Act only to purchasers of a security under the Act. See Van Hoof v. Van Hoof, 997 So.2d 278 (Ala.2007) (affirming a summary judgment in favor of defendant where the plaintiff did not assert any claims by which she sought to recover consideration paid for a security that was offered or sold). See also White v. Sanders, 650 F.2d 627, 629 (5th Cir.1981) (stating that Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5 (1981), which is virtually identical to § 8-6-17(a), provides “redress for defrauded purchasers and sellers of securities, whereas the Alabama blue sky law [the Act] allows recovery by purchasers only”); and Hunt v. American Bank & Trust Co. of Baton Rouge, La., 606 F.Supp. 1348, 1353 (D.C.Ala.1985) (stating that “[t]he primary distinction between the Alabama Blue Sky law [the Act] and the federal securities law 10b-5 claim is that the Alabama securities fraud remedies can only be sought by a purchaser whereas the federal remedy is open to both sellers and purchasers”).
 The plaintiffs’ theory of the case, as it relates to the claim asserting securities fraud, is that the defendants issued or participated in the issuance of the proxy statement that contained material misrepresentations and omissions of material facts in connection with the offer to purchase the plaintiffs’ shares of Altrust stock. The plaintiffs further allege that they relied upon the misrepresentations and omissions contained in the proxy statement and that they were induced into signing the shareholders’ agreements agreeing to remain shareholders in Altrust instead of receiving the offered price of $17.25 per share for their Altrust stock, which they state is, and at all relevant times has been, worth far less than $17.25 per share. The plaintiffs have not alleged any facts indicating or asserted any claims alleging that they were purchasers of Altrust stock. Accordingly, the plaintiffs cannot assert a claim of securities fraud under the Act, and the trial court did not err in dismissing the plaintiffs’ securities-fraud claim.[5]

Case No. 1091610

The plaintiffs alleged in count III of their original complaint that the Altrust defendants had negligently breached certain duties of care owed in the management and administration of Altrust’s affairs, including the duty to “exercise reasonable and prudent supervision over the management, practices, controls and financial affairs of [Altrust].” However, the plaintiffs, in their third amended complaint, amended count III of the original complaint to allege that the Al-trust defendants failed to disclose the breaches of duty, including the instances of alleged wrongdoing set out above, that proximately resulted in the plain *238 tiffs’ suffering damage. The plaintiffs explain that as the result of the Altrust defendants’ concealment of the company’s mismanagement and other -wrongdoing affecting the financial state of Al-trust, the proxy statement contained a number of misrepresentations and omissions. The plaintiffs state that, in reliance on the misrepresentations and omissions in the proxy statement, they were induced to reject the offered purchase price of $17.25 per share for their shares of Altrust stock, thereby retaining the Altrust stock, which is, and was at all relevant times, worth substantially less than the offered purchase price of $17.25 per share. Because the plaintiffs amended their original negligence claim to assert a claim of fraudulent suppression, we will address count III as a fraudulent-suppression claim rather than a negligence claim.
In granting the defendants’ motions for a permissive appeal pursuant to Rule 5, Ala. RApp. P., the trial court certified the controlling question of law as whether the plaintiffs have standing to bring a “direct action” — as opposed to a derivative action pursuant to Rule 23.1, Ala. R. Civ. P. — like the action asserted by the plaintiffs in counts II and III of their third amended complaint. The trial court noted that the plaintiffs cited Boykin v. Arthur Andersen & Co., 639 So.2d 504 (Ala.1994), as controlling, whereas, the defendants relied on a number of other decisions the trial court noted were in direct conflict with the Boy-kin decision.
The Altrust defendants strenuously argue that the plaintiffs’ claims of wrongdoing, which the plaintiffs say resulted in a loss in what the plaintiffs could have received for their shares of stock, is a quintessential derivative claim that must be brought on behalf of Altrust and that cannot be maintained as a direct action by the plaintiffs. The plaintiffs contend that the trial court properly denied the Altrust defendants’ motion to dismiss their claims because, they say, they have properly alleged a direct claim of fraud against the Altrust defendants under Boykin.
“[I]n analyzing whether a claim is derivative or direct, this Court looks to the nature of the alleged wrong rather than the designation used by the plaintiff in the complaint.” Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 345 (Ala.2006). In Boykin, the plaintiffs, two stockholders in Secor Bank, sued certain officers and directors of the bank, as well as the bank’s independent public-accounting firm, asserting claims of fraud, conspiracy, professional negligence, and breach of fiduciary duty alleging that the defendants had deliberately entered into a scheme to defraud “the stockholders of the bank by misrepresenting its true financial condition.” Boykin, 639 So.2d at 506. The plaintiffs later amended their complaint to assert claims on behalf of all shareholders in a class action.
The Boykin plaintiffs claimed that the defendants, acting in concert, mismanaged the bank and refused to disclose material liabilities and failed to disclose three years of losses resulting from millions of dollars of bad commercial loans. The Boykin plaintiffs alleged that the defendants knew the true financial condition of the bank and yet failed to mention material losses or liabilities on three years of annual reports. The claims asserted by the Boykin plaintiffs were asserted on their own behalf and not derivatively on behalf of the bank. The damages claimed by the Boy-kin plaintiffs were based on the “purchase, retention, and/or sale of stock with a fair market value substantially less than that represented by the defendants, and on the diminution of the value of the plaintiffs’ stock.” Boykin, 639 So.2d at 506.
*239 The trial court in Boykin granted the corporate defendants’ Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted, stating that the plaintiffs’ claims against the individual defendants were derivative in nature and, therefore, that the plaintiffs lacked procedural standing because they had failed to make a demand upon the board of directors in compliance with Rule 23.1, Ala. R. Civ. P.
In reversing the judgment of the trial court, this Court in Boykin stated:
“The issue before us is whether the trial court erred in entering the Rule 12(b)(6) dismissal on the holding that no remedy exists for individual shareholders’ claims of fraud, breach of fiduciary duty, negligence, and conspiracy to defraud where an accounting firm and a corporation’s officers and directors failed to disclose material liabilities to the shareholders.
“We hold that the trial court erred in granting the motion to dismiss....
“The trial court’s rationale for dismissing the claims against the individual defendants was that the plaintiffs had failed to make a demand on the board of directors pursuant to Rule 28.1, Ala. R. Civ. P. The individual defendants would have us affirm the dismissal of the claims against them for failure to state a claim upon which relief can be granted, on the grounds that the only harm suffered by the plaintiffs is the diminution in value of their corporate stock, and that that harm is not a personal harm, but a harm to the corporation. The accountants argue that the plaintiffs’ claim must be rejected, because, they say, the plaintiffs do not allege an injury to them as individuals for which the law provides a remedy and because, they say, ... the only remedy the law provides is a derivative action on behalf of the corporation.
“We disagree. Neither Rule 23.1 nor any other provision of Alabama law requires that stockholders’ causes of action that involve the conduct of officers, directors, agents, and employees be brought only in a derivative action. Moreover, demand may be excused in a derivative action if a demand would be futile. Elgin v. Alfa Corp., 598 So.2d 807, 814 (Ala.1992). However, the plaintiffs’ claims asserted here against Arthur Andersen and the individual defendants, former officers and directors of Secor Bank, are not derivative in nature. They do not seek compensation for injury to the bank as a result of negligence or mismanagement. The plaintiffs’ claims allege fraud, intentional misrepresentations and omissions of material facts, suppression, conspiracy to defraud, and breach of fiduciary duty. The plaintiffs have asserted that they relied to their detriment on inaccurate financial reports certified by Arthur Andersen; that Arthur Andersen was aware that the annual reports of Secor Bank upon which they placed their certification were to be specifically directed and addressed to the shareholders of the bank; and that the purpose for disseminating the annual reports was to communicate to them, as shareholders, the financial condition of the corporation.
“As we stated earlier, the burden was on the movants, on their Rule 12(b)(6) motion to dismiss, to show initially that the plaintiffs could prove no set of facts entitling them to relief. Fontenot [v. Bramlett, 470 So.2d 669 (Ala.1985)]. Therefore, in regard to the Rule 12(b)(6) motion as to the claims against the individual defendants, the onus was on the defendants to show that all claims made by the plaintiffs were derivative in nature. We conclude that the plaintiffs’ *240 claims are not derivative in nature, and are claims upon which relief can be granted. Therefore, we reverse the trial court’s judgment as to the individual defendants.”
Boykin, 639 So.2d at 507-08.
Justice Maddox stated the following in his dissent in Boykin:
“I believe that the trial court correctly held that [the plaintiffs] lacked standing to file a direct action against the defendants, because the acts and omissions complained of provided a cause of action on the part of the corporation and could, therefore, be asserted only derivatively on behalf of the corporation and not by individual shareholders as was done in the complaint.
“This Court has held that ‘[i]t is only when a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name.’ Green v. Bradley Construction, Inc., 431 So.2d 1226, 1229 (Ala.1983). Consequently, ‘diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.’ Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981). [The plaintiffs’] alleged harm is the diminution in the value of their stock in the corporation; this harm is not unique to them. This alleged harm is equally suffered by all other shareholders. In fact, [the plaintiffs] included in their amended complaint claims on behalf of all shareholders in a class action. Therefore, these claims are not properly brought by these plaintiffs acting in an individual capacity.
“Boykin and Apon cite no cases, Alabama or otherwise, holding that individual shareholders may sue on their own behalf for a diminution in the value of their stock caused by a breach of fiduciary duties by corporate officers and directors. In Shelton v. Thompson, 544 So.2d 845, 846-47 (Ala.1989), this Court affirmed the summary judgment on claims alleging breach of fiduciary duties by officers and directors of a corporation brought by the plaintiff stockholders in their individual capacity. Other jurisdictions have also rejected direct shareholder actions alleging breach of fiduciary duties against corporate officers and directors. See, e.g., Friedman v. Mohasco Corp., 929 F.2d 77, 79 (2d Cir.1991) (affirming the dismissal of shareholders’ breach of fiduciary duty claims and stating that ‘these claims could only be be asserted derivatively on behalf of the corporation’); Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 744-45 (5th Cir.1989) (dismissing a shareholder action under Texas law, holding that the corporation, not the shareholders, had standing to sue on the breach of fiduciary duty claim); Nowling v. Aero Services Int’l, Inc., 752 F.Supp. 1304, 1314-15 (E.D.La.1990) (stating that ‘an injury to corporate stock burdens all shareholders indiscriminately and thus an individual shareholder has no standing to make the claim’ and that ‘an action to recover from an officer or director for a breach of fiduciary duty is secondary and must be asserted through a shareholder’s derivative suit’); Hoffman v. Optima Systems, Inc., 683 F.Supp. 865, 872 (D.Mass.1988) (‘[The shareholder’s] cause of action — corporate mismanagement and breach of fiduciary duty — is a corporate cause of action belonging to [the corporation]. [The shareholder] has not brought this action in a representative capacity or on behalf of [the corporation]. Accordingly, [the shareholder] lacks standing to sue for corpo *241 rate mismanagement....’); Gabrielsen v. BancTexas Group, Inc., 675 F.Supp. 367, 372 (N.D.Tex.1987) (dismissing a breach of fiduciary duty claim by shareholders against directors because ‘plaintiffs do not have standing to assert such claims because the claims belong to the corporation ... and may only be asserted by a shareholder in a derivative action’); Enterra Corp. v. SGS Associates, 600 F.Supp. 678, 689 (E.D.Pa.1985) (‘An alleged breach of fiduciary duty on the part of the directors which is asserted on behalf of all shareholders or the entire corporation ... must be maintained as a derivative action and cannot be asserted by individual shareholders in their own right.’). The law is clear that there is no cause of action for claims of breach of fiduciary duty against officers and directors by shareholders in their individual capacity, and the trial court correctly dismissed these claims.
“Boykin and Apon are alleging the same harm that was alleged and rejected in McLaughlin v. Pannel[l] Kerr Forster, 589 So.2d 143 (Ala.1991), a case that affirmed a summary judgment on personal claims brought by corporate stockholders against an accounting firm that had worked for the corporation, specifically claims that ‘the defendants’ actions with respect to the corporations had resulted in the corporations’ losing the use of certain funds.’ McLaughlin, 589 So.2d at 144 n. 3. See also, Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981) (‘diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right’). Boykin and Apon’s claims must likewise be rejected because these plaintiffs do not allege an injury to them as individuals for which the law provides a remedy. The remedy the law provides for the type of harm suffered by the plaintiffs is a derivative action on behalf of the corporation.”
Boykin, 639 So.2d at 511-12 (Maddox, J., dissenting).
The Boykin decision appears to conflict with settled principles in this area of the law. “It is well settled that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation.” Pegram v. Hebding, 667 So.2d 696, 702 (Ala.1995). “It is only when a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name.” Green v. Bradley Constr., Inc., 431 So.2d 1226, 1229 (Ala.1983). Justice Houston noted the general rule in his special writing concurring in the result in Gilliland v. USCO Power Equipment Corp., 631 So.2d 938 (Ala.1994):
“ ‘As explained in Galbreath [v. Scott, 433 So.2d 454 (Ala.1983),] the primary difference between derivative and individual claims is one of standing, and standing is determined by the directness of the injury. If the wrong directly damages the corporation and its assets from waste, conversion and intentional mismanagement, the claim is the corporation’s. Hardy v. Hardy, 507 So.2d 409 (Ala.1987); Shelton v. Thompson, 544 So.2d 845 (Ala.1989). A consequential decrease in the value of the shareholder’s shares does not vest in him an individual claim. Green v. Bradley Construction, Inc., 431 So.2d 1226 (Ala.1983); Stevens v. Lowder, 643 F.2d 1078 (5th Cir.1981). But if the wrong is committed directly against the shareholder and his interests, such as oppression or fraud, so that his injury is unique, he *242 will have standing to assert individual claims. McDonald v. U.S. Die Casting & Dev. Co., [541] So.2d 1064 (Ala.1989).’ ”
631 So.2d at 940 (quoting Andrew P. Campbell, Litigating Minority Shareholder Rights and the New Tort of Oppression, 53 Ala. Law. 108, 114 (March 1992)).
The principles of law set forth above in Justice Maddox’s dissent in Boykin and Justice Houston’s special writing in Gilli-land have been consistently applied in a number of decisions decided both before and after Boykin. In Green, supra, the plaintiff stockholder sued the defendants, alleging that their fraudulent conduct caused him to suffer a loss of his share of certain income and equities of the corporation. The defendants moved to dismiss the complaint, and the trial court granted their motion. The plaintiff stockholder argued on appeal that the defendants’ fraudulent conversion of his funds from the corporation was, in effect, a conversion of his personal assets. He contended that his status to maintain suit was not based on its being a derivative action but, instead, on the establishment of a constructive trust for funds that had accrued to him but that had been fraudulently converted by the defendants for their personal use. This Court determined that because the acts alleged would affect all stockholders, the plaintiff lacked standing to prosecute his direct action. “It is only when a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name.” Green, 431 So.2d at 1229.
In Shelton v. Thompson, 544 So.2d 845 (Ala.1989), the plaintiff stockholders of a bank sued certain officers and directors of the bank on behalf of themselves, other unnamed stockholders similarly situated, and derivatively on behalf of the bank, alleging that the defendant officers and directors of the bank had made bad or fraudulent loans in breach of their fiduciary duties, thereby causing injury to the bank and to the individual plaintiffs. The defendants moved to dismiss the complaint against them, arguing, among other things, that the plaintiffs had failed to allege facts sufficient to allow the plaintiffs to sue and recover individually. In granting the defendants’ motion, the trial court reasoned in part that the plaintiffs did not have standing to sue on their own behalf because the alleged wrongs were to the bank. This Court affirmed the trial court’s dismissal of the plaintiffs’ individual claims, stating: “Whatever damages the plaintiffs may have suffered were incident to their status as stockholders; and whatever recovery may be effected by the derivative action inures to the benefit of all innocent stockholders and not to the plaintiff stockholders individually.” Shelton, 544 So.2d at 847.
In McLaughlin v. Pannell Kerr Forster, 589 So.2d 143 (Ala.1991), a group of stockholders sued an independent accounting firm on behalf of themselves, other stockholders, and, derivatively, the corporation, asserting claims of breach of contract and fraud and alleging that the accounting firm and two of its employees had failed to disclose in annual audits of the corporation that certain commissions were being improperly paid to and by several of the corporations’ principal officers and directors. The plaintiffs claimed that as a result of the defendants’ actions the corporation had been deprived of the use of a large sum of its money over an extended period. The defendants argued, among other things, that the plaintiffs lacked standing to sue on their own behalf because, they argued, the alleged injury was to the corporation. In affirming a sum *243 mary judgment entered in favor of the defendants, this Court, citing Shelton, stated that the individual damages sought to be recovered by the plaintiffs were incidental to their status as stockholders.
In Pegram, supra, a case decided after Boykin, the plaintiff, a stockholder and officer in the company, sued another corporate officer of the company, alleging, among other things, that the defendant corporate officer had forced the plaintiff from the company in order to implement and perpetuate a fraudulent accounting scheme. The plaintiff also sought damages from the defendant based on allegations that the defendant had suppressed information from the company’s board of directors concerning the defendant’s involvement in a scheme to defraud the company. The trial court directed a verdict in favor of the defendant on the plaintiff’s fraudulent-suppression claim. The plaintiff argued on appeal that the defendant had a duty to disclose the fraudulent accounting scheme and that the defendant had failed to make that disclosure. The defendant argued that the suppression claim was a claim asserted on behalf of the company that could not support an award of damages to the plaintiff personally. Pe-gram, supra.
In affirming the judgment entered on the directed verdict in favor of the defendant, this Court stated:
“The directed verdict on this aspect of [the plaintiffs] suppression claim was proper. [The plaintiffs] suppression claim was a personal claim for damages. It is well settled that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation. McLaughlin v. Pannell Kerr Forster, 589 So.2d 143 (Ala.1991). Although [the defendant’s] involvement in the scheme to manipulate [the company’s] accounting records was relevant with respect to [the plaintiffs] claim alleging intentional interference with his employment contract, whatever damage [the plaintiff] may have incurred personally from [the defendant’s] fraudulent suppression of this information from [the company] was incidental to his status as a stockholder. Whatever recovery might be effected by a derivative action against [the defendant] would inure to the benefit of all innocent [company] stockholders and not to [the plaintiff] individually.”
Pegram, 667 So.2d at 702. The Court did not mention Boykin in its analysis.
In Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458 (Ala.1997), AmSouth Bank had served as the executor of two estates that controlled a majority of a family-owned timber company’s stock. The bank had appointed three of its employees to the company’s board, thereby gaining a majority of the board of directors. The plaintiff, a stockholder in the timber company, sued the bank and its employees, asserting, among other things, individual claims of minority-shareholder oppression. The plaintiff alleged that the bank had sought to “squeeze” him out of the company, to deny him his share of benefits from the company, and to force him to sell his stock at a price disproportionately below the market value. The trial court entered a summary judgment in favor of the bank and its employees on the plaintiffs individual claims. In affirming the summary judgment in favor of the bank on the plaintiffs individual claims, this Court stated:
“[T]he Galbreath [v. Scott, 433 So.2d 454 (Ala.1983),] Court held that the plaintiff, who had alleged that the majority shareholders had committed waste of the corporation’s assets, could not recover individually under a squeeze-out theory:
*244 “ ‘The waste of corporate assets by majority stockholders is primarily an injury to the corporation itself. The injury to minority stockholders is secondary. If the corporation refused to assert its cause of action, an action may be maintained by stockholders on behalf of the corporation. In such an action the corporation is the real party in interest and would be the one in whose favor a judgment would be rendered.’
“Galbreath, at 457 (citations omitted). See also Pegram v. Hebding, 667 So.2d 696, 702 (Ala.1995) (‘[i]t is well settled that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation’).
“Although this Court has held that majority shareholders in a close corporation ‘owe a duty to at least act fairly to the minority interests,’ Burt Boiler Works, 360 So.2d [327] at 331 [(Ala.1978) ], the squeeze-out cause of action is not a panacea for any and all conduct undertaken by majority shareholders of a close corporation that could be deemed ‘unfair’ to the minority. As our holding in Galbreath indicates, a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also ‘unfair’ to him as well. [The plaintiff] asserts that the majority shareholders have engaged in ‘oppressive’ conduct that has resulted ‘in a depreciation in the value of his stock, instead of an enhancement thereof, and deprivation of assets of the corporation, all to the detriment of [the plaintiff] and other shareholders.’ The lost value of a minority shareholder’s stock resulting from director self-dealing or mismanagement could certainly be characterized as ‘unfair’ to the minority stockholder in some sense, but this is a quintessential derivative injury, merely incidental to one’s status as a stockholder, and thus not a harm cognizable under a squeeze-out theory. Galbreath; Pegram, supra. A minority shareholder has a remedy for such an injury, but that remedy is a derivative action brought on behalf of the corporation.”
Stallworth, 709 So.2d at 466-67.
In James v. James, 768 So.2d 356 (Ala.2000), the plaintiff, a minority shareholder in a company, sued the majority shareholder, alleging individual claims of fraudulent suppression and oppression/squeeze out and alleging, on behalf of the corporation, a breach of fiduciary duty. In determining that the individual claims asserted by the plaintiff were actually derivative claims, this Court stated:
“First, we deal with the issue whether all of [the plaintiffs] claims were derivative claims, or whether some can be considered individual claims. [The plaintiff] made certain derivative claims: that [the defendant] (1) had wasted corporate assets; (2) had paid excessive compensation to himself and his family; (3) had illegally usurped corporate opportunities; and (4) had unjustly enriched himself at the expense of [the company]. He also made individual claims of ‘oppression/squeeze out’ and fraudulent suppression, based on [the defendant’s] alleged misconduct and breach of a fiduciary duty to [the plaintiff]. [The defendant] contends that all of these claims are really derivative claims and, therefore, that if any damages are awarded for them, then [the company], not [the plaintiff], is entitled to them.
*245 “This Court has held that majority shareholders in a close corporation owe a duty to act fairly toward minority shareholders. Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458, 467 (Ala.1997); Burt v. Burt Boiler Works, 860 So.2d 827, 331 (Ala.1978). However, it has also held that when a plaintiffs status as a shareholder is essential to his claims for damages, including damages based on claims of suppression and oppression, the claims are derivative claims and must be brought on behalf of the corporation. Pegram v. Hebding, 667 So.2d 696, 702 (Ala.1995); McLaughlin v. Pannell Kerr Forster, 589 So.2d 143 (Ala.1991). Therefore, ‘a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also “unfair” to him as well.’ Stallworth, 709 So.2d at 467.
“[The plaintiff] made claims for individual damages based on the harm he says was done to [the company]. The cause of this harm was [the defendant’s] alleged mismanagement of [the company]. Therefore, any claims made by [the plaintiff] should have been derivative claims.”
James, 768 So.2d at 358-59.
The Altrust defendants and Dixon Hughes (in case no. 1091620) ask this Court to overrule Boykin or, in the alternative, to limit its scope because it is in direct conflict with the above-discussed authorities insofar as it holds that a plaintiff stockholder has standing to maintain a direct action based on fraud in the stockholder’s individual name without alleging that certain wrongs have been committed as a direct fraud upon him and that such wrongs do not affect other stockholders. The decision in Boykin was a divergence in the law as it pertains to shareholder standing to bring a direct action alleging fraud against a corporation and its officers and directors. The main opinion in Boy-kin offered no guidance or analysis on how that decision might be reconciled with the contrary authority. Specifically, the main opinion in Boykin failed to discuss how the damage suffered by the plaintiffs as the result of the alleged fraud by officers, directors, and accountants differed from the damage suffered by other shareholders and whether the plaintiffs suffered an injury unique to them. Our research indicates that the decision in Boykin has not been followed as it pertains to this point of law. Accordingly, we hereby overrule Boykin. We reaffirm the rule as set forth in Pe-gram, swpra, Green, supra, Justice Houston’s special writing in Gilliland, supra, and Justice Maddox’s dissent in Boykin. We now apply this rule to the allegations in the plaintiffs’ complaint.
The plaintiffs contend that they have standing to assert a direct action alleging fraud against the Altrust defendants because, they say, they have sufficiently alleged that they suffered a harm that was unique to them. The plaintiffs argue in their brief to this Court:
“The plaintiffs belonged to a subset of shareholders harmed in a particular way by the misrepresentations. Small shareholders, as stated in the Facts above, were not eligible to buy into the new corporation and were simply cashed out, the misrepresentations in the proxy being irrelevant to their transaction. Directors and certain other shareholders were automatically opted in after the privatization of the Company. The plaintiffs, however, were part of a unique group of shareholders eligible to opt in that had to evaluate the financial reports and proxy statement and make a *246 decision whether to approve the shareholder agreement or whether to accept the proposed cash out. The misrepresentations affected plaintiffs in a way-unique to them and not to all shareholders (or the corporation) generally.”
We disagree. The reorganization plan as set forth in the proxy statement contemplated a mandatory repurchase of stock from shareholders owning 6,400 or fewer shares of stock and from those shareholders otherwise ineligible to own stock in a Subchapter S corporation. The remaining class of eligible shareholders, to which the plaintiffs belong, were given the option of voting in favor of the reorganization plan and remaining shareholders in Altrust or accepting the offer from Altrust to purchase their stock at $17.25 per share.
We note that the damages the plaintiffs seek to recover here are incidental to their status as part of the remaining eligible shareholders in Altrust not covered by the mandatory repurchase provision. Where the damages sought to be recovered are incidental to the plaintiffs status as a shareholder, including damages based on a claim of fraudulent suppression, the claim is a derivative one and must be brought on behalf of the corporation. James, 768 So.2d at 358-59, citing Pegram, 667 So.2d at 703. Although the plaintiffs have cast their claim for damages as a fraudulent-suppression claim, the actual harm — the diminution of their Altrust stock based on the actual state of affairs at the company — -was caused by the alleged mismanagement and wrongdoing of the Altrust officers and directors. This harm is not unique to the plaintiffs; rather, it is suffered equally by all remaining eligible shareholders in Altrust. Because the harm suffered by the plaintiffs also affects all other remaining eligible shareholders in Altrust, the plaintiffs do not have standing to assert a direct action. Green, supra. Accordingly, we conclude that the trial court erred in denying the Altrust defendants’ motion to dismiss the action against them because the plaintiffs do not have standing to maintain a direct action in this case.

Case No. 1091620

In asserting their professional-negligence claim against Dixon Hughes, the plaintiffs alleged that Dixon Hughes performed accounting and auditing services in connection with the financial statements contained in the proxy statement; that Dixon Hughes was aware that the financial statements were being prepared for the benefit of the plaintiffs and other shareholders; that Dixon Hughes was aware that the plaintiffs and other shareholders would rely upon the financial statements in making investment decisions; that Dixon Hughes was aware that the financial statements it certified would be relied upon by the plaintiffs and other shareholders as stating the true and correct financial status and condition of Al-trust; that Dixon Hughes owed a duty of care to the plaintiffs to ensure that the financial statements were accurate and did not contain any fraudulent or misleading financial information; that Dixon Hughes reported that the financial statements were free of material misstatement; that because of Dixon Hughes’s expertise in matters of accounting and auditing the plaintiffs properly relied upon Dixon Hughes’s report; that Dixon Hughes failed to exercise its duty of diligence and due care; and that because of Dixon Hughes’s negligence the plaintiffs have suffered substantial harm.
As discussed above under the heading “Case No. 1091610,” the “substantial harm” actually suffered by the plaintiffs was caused by the alleged mismanagement and wrongdoing of the Altrust officers and directors. The damages the plaintiffs seek *247 to recover from Dixon Hughes are also incidental to their status as part of the remaining eligible shareholders in Altrust. Therefore, the claim asserted against Dixon Hughes is also derivative and must be brought on behalf of the corporation. James, 768 So.2d at 358-59, citing Pegram, 667 So.2d at 703. The plaintiffs have asserted that they suffered substantial harm as the result of Dixon Hughes’s alleged breach of a duty owed to them. However, like the harm alleged to be suffered as a result of the Altrust defendants’ actions in case no. 1091610, the substantial harm alleged to be suffered by the plaintiffs as the result of Dixon Hughes’s breach of duty is not unique to the plaintiffs and is suffered equally by all remaining eligible shareholders in Altrust. As discussed in Boykin, which we today overrule, the issue is “whether no remedy exists for individual shareholders’ claims of fraud, breach of fiduciary duty, negligence, and conspiracy to defraud where an accounting firm and a corporation’s officers and directors failed to disclose material liabilities to the shareholders.” 639 So.2d at 504. Here, as in Boykin, the only harm suffered by the plaintiffs is the diminution in value of their corporate stock, which is not a personal harm, but a harm to the corporation. The accountants in Boykin, who suffered a judgment against them, argued, as do the accountants here, although unsuccessfully in Boykin, that “the plaintiffs do not allege an injury to them as individuals for which the law provides a remedy and because, they say, ... the only remedy the law provides is a derivative action on behalf of the corporation.” 639 So.2d at 508. We agree.
Because the harm alleged to be suffered by the plaintiffs also affects all other remaining eligible shareholders in Altrust, the plaintiffs do not have standing to assert a direct action. Green, supra. Because the plaintiffs’ action is derivative in nature and they do not have standing to assert a direct action for an individual injury, the trial court erred in denying Dixon Hughes’s motion to dismiss. See McLaughlin, 589 So.2d at 144.
Accordingly, we conclude that the trial court erred in denying Dixon Hughes’s motion to dismiss the professional-negligence claim against it because the plaintiffs do not have standing to maintain a direct action claiming professional negligence for any alleged harm suffered that was incidental to their status as shareholders and that was not unique to them.

Conclusion

We affirm the trial court’s dismissal of the plaintiffs’ claim alleging securities fraud. We reverse the trial court’s denial of the Altrust defendants’ motion to dismiss the fraudulent-suppression claim against it. We also reverse the trial court’s denial of Dixon Hughes’s motion to dismiss the professional-negligence claim against it. We remand the cause to the trial court for proceedings consistent with this opinion.
1091759 — AFFIRMED.
1091610 — REVERSED AND REMANDED.
1091620 — REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.

. The individual defendants are executive officers and members of the board of directors of Altrust and the Bank.

. The plaintiffs did not make a presuit demand under Rule 23.1, Ala. R. Civ. P., and do not seek to recover damages derivatively on behalf of Altrust. Rather, the plaintiffs, individual shareholders in Altrust, are proceeding directly on their own behalf.

. The plaintiffs have not appealed the dismissal of the aiding-and-abetting and conspiracy claims.

. "In Manson v. State, 349 So.2d 67, 73 (Ala.Cr.App.), cert. denied, 349 So.2d 86 (Ala.1977), as well as in this action, the Court of Criminal Appeals stated that Code 1975, § 8-6-17, is identical 'in all respects, other than the insertion of the word "offer,” and that which is necessary to a delineation between the area of sovereignty of Alabama and that of the United States' to Rule 10b-5 of the Securities and Exchange Commission. See, 17 C.F.R. § 240.10b-5 (1981). Therefore, since there are few Alabama cases construing the Alabama securities laws, federal cases should be reviewed to aid in the proper interpretation of the corresponding sections of Alabama statutory law inasmuch as the sections are virtually identical.”
Buffo v. State, 415 So.2d 1158, 1161-62 (Ala.1982).

. The securities-fraud claim against Dixon Hughes would also fail as a matter of law because Dixon Hughes is a public-accounting firm that completed audits of and prepared financial reports for Altrust. There have been no allegations that Dixon Hughes was a seller of securities or that Dixon Hughes was retained and compensated by the plaintiffs to advise them as to the value of securities or to issue a report concerning those securities. Section 8 — 6—2(1 S)(c) expressly excludes accountants from advisor liability under the Act.