BRYAN, Judge.
Gerald V. Salter (“Gerald”) appeals from a summary judgment in favor of Michael F. Moseley. We affirm.
Sometime before 2008, M. Taylor Dawson, Jr., began doing business as a sole proprietor under the name “Andrew & Dawson, a proprietorship” (“the proprietorship”). After Dawson began doing business as the proprietorship and before 2003, a corporation was formed under the name Andrew & Dawson, Inc. (“the corporation”), to engage in the construction business. Dawson, who owned shares of the corporation, continued to do business as the proprietorship after the formation of the corporation. According to Gerald, Dawson held a contractor’s license issued in the name of the proprietorship, and the corporation operated as a contractor based on that contractor’s license. In addition, the proprietorship obtained performance bonds for the corporation on large construction projects because the corporation lacked sufficient net worth to obtain them. In 2003, the corporation contracted to perform two large construction projects, which the parties refer to as “the St. John’s Church project” and “the Auburn Water project.” We will refer to those two projects as “the two projects.” According to Gerald, the corporation could not have obtained the contracts to construct the two projects without the contractor’s license in the name of the proprietorship and performance bonds obtained by the proprietorship.
On January 1, 2004, Dawson assigned Moseley, who was an employee and shareholder of the corporation, the assets Dawson had used in doing business as the proprietorship and the right to use the proprietorship’s name. In August 2004, Moseley sold his shares of the corporation to Gerald and Brent Salter, Gerald’s son. Eventually, Gerald and Brent became the owners of all the shares of the corporation.
On November 1, 2004, Moseley sold Gerald the fixed assets and equipment he had used in doing business as the proprietorship and the right to use the proprietorship’s name. That sale was memorialized in a written asset-purchase agreement (“the asset-purchase agreement”). In pertinent part, the asset-purchase agreement provided:
“This Asset Purchase Agreement (the ‘Agreement’) entered into on this the 1st day of November, 2004 (the ‘Effective Date’), by and between Michael F. Moseley, an individual residing in Montgomery, Alabama doing business as Andrew & Dawson, a proprietorship (the ‘Seller’), and Gerald V. Salter, an individual residing in Evergreen, Alabama (the ‘Purchaser’).
[[Image here]]
“A. Basic Transaction
“1. Purchase and Sale of Assets. On and subject to the terms and conditions of this Agreement, Purchaser agrees to purchase from Seller, and the Seller agrees to sell, transfer, convey and deliver to the Purchaser the following, which shall hereinafter be referred to as the Assets: “a. All fixed assets and equipment of the Business, including but not limited to the equipment, machinery and vehicles listed on Exhibit ‘A’ hereto, all in ‘as is’ condition.
“b. The right to use the name ‘Andrew <& Dawson’ or ‘Andrew & Dawson, a proprietorship.’
“It is understood by the parties that this conveyance does not include any assets of Andrew & Dawson, Inc., or any *244 personal assets of Michael F. Moseley not used in the Business.
[[Image here]]
“b. Seller agrees to indemnify Purchaser from and against ... any and all losses, actions and cost of defense of actions resulting from, arising out of or relating to contracts entered into by the Seller pri- or to the Effective Date.”
(Capitalization altered; emphasis added.)
At some point, the costs of constructing each of the two projects began to exceed its total contract price. Moseley provided approximately $570,000 to the corporation to assist it in completing the two projects. Dawson also provided funds to the corporation for that purpose.
■ In 2008, Dawson sued Gerald, Brent, the corporation, and other entities in which Gerald and Brent owned an interest, claiming that the funds he had provided to the corporation for the completion of the two projects had been loans and that Gerald, Brent, and the corporation had not repaid the loans. Gerald, Brent, and the corporation asserted various counterclaims against Dawson. Gerald, Brent, and the corporation also filed a motion for leave to file a third-party complaint against Moseley. On October 8, 2009, Dawson, Gerald, Brent, the corporation, and Moseley signed a settlement agreement (“the settlement agreement”). Among other thing's, the settlement agreement provided that Moseley would pay Dawson $125,000, that Gerald would execute a note payable to Dawson in the amount of $125,000 (“the note”) and a mortgage to secure the payment of the note (“the mortgage”), and that any claims Gerald might have against Moseley based on the asset-purchase agreement were excepted from the settlement. After the settlement agreement was executed, Dawson dismissed his claims against Gerald, Brent, the corporation, and the other entities in which they owned an interest, and Gerald, Brent, and the corporation dismissed their counterclaims against Dawson. Sometime after October 8, 2009, and before May 24, 2010, Dawson published a notice that he was foreclosing the mortgage in a newspaper.
On May 24, 2010, Gerald sued Dawson and Moseley in the Conecuh Circuit Court seeking an injunction enjoining Dawson from foreclosing the mortgage and seeking an award of damages against Moseley. Against Moseley only, Gerald’s complaint stated claims of breach of contract, breach of fiduciary duty, bad faith, suppression, and misrepresentation.
Subsequently, Gerald and Dawson settled their dispute, and Gerald’s claim for an injunction against Dawson was dismissed. The Conecuh Circuit Court then transferred the action to the Montgomery Circuit Court (“the trial court”).
On November 11, 2010, Moseley answered Gerald’s complaint. After the parties conducted discovery, Moseley filed a motion for a summary judgment on October 6, 2011. Gerald filed a response to the summary-judgment motion on November 1, 2011. Following a hearing, the trial court, on November 14, 2011, entered a summary judgment in favor of Moseley without specifying the basis for the summary judgment. On December 11, 2011, Gerald filed a postjudgment motion, which the trial court denied on December 13, 2011. On January 14, 2012, Gerald timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determin *245 ing whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Gas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [869] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Gerald’s brief to this court states that he does not seek review of the summary judgment with respect to his claims of breach of fiduciary duty, bad faith, suppression, and misrepresentation (Gerald’s principal brief at p. 9), and he does not argue that the trial court erred in entering a summary judgment with respect to those claims. Thus, Gerald has abandoned those claims. See Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (holding that the appellant had abandoned two of his claims by failing to argue that the entry of a summary judgment with respect to those claims was erroneous). Therefore, we affirm the summary judgment with respect to the claims of breach of fiduciary duty, bad faith, suppression, and misrepresentation. Id.
Gerald does argue that the trial court erred in entering a summary judgment with respect to his breach-of-contract claim. Gerald bases his breach-of-contract claim on the provision of the asset-purchase agreement stating that “Seller agrees to indemnify Purchaser from and against ... any and all losses, actions and cost of defense of actions resulting from, arising out of or relating to contracts entered into by the Seller prior to the Effective Date.” (Emphasis added.) As used in the asset-purchase agreement, the term “Seller” means “Michael F. Moseley, an individual ... doing business as Andrew & Dawson, a proprietorship,” and the term “Purchaser” means “Gerald V. Salter, an individual.” Thus, by its terms, that indemnity provision indemnifies only Gerald; it does not indemnify the corporation. Moreover, by its terms, that provision indemnifies Gerald from and against losses he sustains as a result of contracts entered into by Moseley doing business as the proprietorship only; it does not indemnify Gerald from and against losses he sustains as a result of contracts entered into by the corporation.
Gerald claimed that Moseley had breached the indemnity provision because, Gerald said, Moseley had not indemnified Gerald for losses Gerald had sustained as a result of the two projects. Moseley asserted as one of the grounds for his summary-judgment motion that Gerald could not establish a prima facie case of breach of contract because, Moseley said, Gerald could not prove that he individually had suffered any damages as a result of the two projects and, therefore, could not prove an essential element of his breach-of-contract claim. See, e.g., State Farm Fire & Cas. Co. v. Williams, 926 So.2d 1008, 1013 (Ala.2005) (“In order to prevail on a breach-of-contract claim, a plaintiff must establish: (1) the existence of a valid *246 contract binding the parties, (2) his own performance under the contract, (3) the defendant’s nonperformance under the contract, and (4) resulting damages.” (emphasis added)). Moseley asserted that all the losses from the two projects had been suffered by the corporation. It is undisputed that all the losses from the two projects were reflected as losses to the corporation on the books of the corporation and that Gerald did not claim any losses from the two projects on his personal income-tax returns.
Nonetheless, Gerald argues that he suffered damages individually from the two projects because, he says, the corporation’s losses are his losses because he is a shareholder of the corporation.[1] In addition, Gerald argues (1) that the two projects were a joint venture between the corporation and the proprietorship because, Gerald says, the corporation could not have obtained the contracts for the two projects without the contractor’s license in the name of the proprietorship and the performance bonds obtained by the proprietorship; [2] (2) that, because the two projects were a joint venture, the corporation and the proprietorship shared the losses from the two projects despite the fact that all the losses were reflected as losses to the corporation on its books;[3] and (3) that he suffered the proprietorship’s losses from the two projects because he is the owner of the proprietorship.[4] Gerald also *247 devotes one sentence to arguing that he suffered damages as a result of (1) his paying Dawson $125,000 to settle their dispute regarding the mortgage and (2) his personally paying some of the expenses for completing the two projects.[5]
However, Gerald does not cite a single legal authority in support of his argument regarding damages. “Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ” Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007). “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.” City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998). Moreover, we note that Gerald did not argue to the trial court that he had suffered damages because he had personally paid some of the expenses of completing the two projects, and, therefore, we could not have considered that argument even if Gerald had supported it with legal authority. See Ex parte Ryals, 773 So.2d 1011, 1013 (Aa.2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.” (emphasis omitted)).
Accordingly, we affirm the summary judgment with respect to the breaeh-of-eontract claim because proof of damages is an essential element of that claim and Gerald has failed to cite any legal authority in support of his argument that he individually suffered damages. See State Farm Fire & Cas. Co. v. Williams, supra, and City of Birmingham v. Business Realty Inv. Co., supra.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The supreme court has held that a shareholder of a corporation cannot prosecute a claim on his own behalf for an injury to the corporation if the shareholder’s loss is merely incidental to his or her status as a shareholder. See, e.g., Altrust Fin. Servs., Inc. v. Adams, 76 So.3d 228, 246-47 (Ala.2011) (holding that shareholders of a corporation could not prosecute a professional-negligence claim on their own behalf against an accounting firm that had performed audits for the corporation because the shareholders’ losses were merely incidental to their status as shareholders). Gerald does not argue that his losses as a shareholder were anything other than incidental to his status as a shareholder.
Moreover, Gerald does not explain how the losses suffered by the corporation from the two projects could have resulted from a contract entered into by Moseley doing business as the proprietorship.

. A right of joint control is an essential element of a joint venture. See Flowers v. Pope, 937 So.2d 61, 67 (Ala.2006) (" ‘[I]t is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control.’ ” (emphasis added; quoting Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala.1983)). Gerald does not assert that the corporation and the proprietorship had a joint right to control the construction of the two projects.

. The contracts to perform the two projects were entered before Dawson assigned Moseley the assets Dawson had used in doing business as the proprietorship. Gerald does not explain how the alleged losses the proprietorship suffered on the two projects could have resulted from a contract entered into by Moseley doing business as the proprietorship.

.The contracts for the two projects were entered while Dawson was doing business as the proprietorship. There is no evidence in the record indicating that Moseley agreed to assume any debts, liabilities, or contractual obligations incurred by Dawson while he was doing business as the proprietorship. There is no evidence in the record indicating that Moseley, doing business as the proprietorship, incurred any debts, liabilities, or contractual obligations related to the two projects after Dawson assigned Moseley tire assets of the proprietorship on January 1, 2004. Moreover, Gerald did not agree in the asset-purchase agreement to assume any debts, liabilities, or contractual obligations incurred by Dawson or Moseley while they were doing business as the proprietorship. Gerald does not explain how he could have suffered losses from the two projects as a result of his doing business as the proprietorship after November 1, 2004, when he did not agree to assume any of the debts, liabilities, or contractual obligations incurred by Dawson or Moseley while they were doing business as the proprietorship.

. Gerald does not explain how those alleged losses could have resulted from a contract entered into by Moseley doing business as the proprietorship.